# Richmond

## W. C. ANDERSON v. COMMONWEALTH OF VIRGINIA.

May 1, 1944.

Record·No. 2826.

Present, All the Justices.

The opinion states the case.

*George Abbitt, Jr.,* and *W. M. Abbitt,* for the plaintiff in error.

*Abram P. Staples, Attorney General,* and *Edwin B. Jones, Assistant Attorney General,* for the Commonwealth.

GREGORY, J., delivered the opinion of the court.·

The accused, W. C. Anderson, was prosecuted and convicted under a warrant in which he was charged with maliciously and unlawfully shooting and injuring the dogs of D. E. Adams. The warrant ·was issued and the prosecution had in accordance with the directions of Code, sèc. 4467 (Michie).

■ There were material facts in dispute at the trial, but under well settled rules they will be stated in the light of the evidence introduced for the Commonwealth.

Early in the morning of July 23, 1943, D. E. Adams went out with his hounds for a fox chase near his home in Prince Edward county. The dogs found a fox and chased it across the land of the accused and beyond. Later they returned and again were crossing his land when he fired several shots at them. Several of the dogs were wounded by these shots. Adams called to the accused and said, "Man, for Lord's sake don't shoot my dogs", to which the accused replied, "I will kill every damn one of 'em and you, too." Later the accused shot in the direction of Adams and some of the shot fell on him.

The land of the accused had been posted and he did not allow any fox hunting there. He had told others that he would shoot any dogs found there.

The accused did not deny that he shot the dogs. His defense was that he shot them because they were chasing his stock. He so testified, but evidently the jury were not impressed with his testimony for they found against him. The evidence failed to disclose that any of the stock had been injured.

A license for the dogs and proper tags had been procured from the treasurer of the county, and the tags had been placed on the collars on the dogs. The dogs were not shown to have been listed or assessed for taxation in the office of the Commissioner of the Revenue.

After the verdict of the jury had been rendered, counsel for the accused moved to set it aside because it was not sustained by the evidence. At that time counsel stated that inasmuch as the warrant and prosecution were under the authority of Code, sec. 4467, it was the duty of the Commonwealth to sustain by proof that the accused had actually violated the terms of that statute, and that the dogs had been listed or assessed for taxation. This the Commonwealth failed to prove.

The trial court overruled the motion but expressly held that the prosecution was had under Code, sec. 4467. The Court observed that the section required dogs to be listed or assessed for taxation, but that there was no provision for listing or assessing dogs for taxation; that the legislature certainly did not intend the owners of dogs to do something which, under our tax law, it was impossible for them to do before their dogs would be protected under Code, sec. 4467, and when the owner secured his licenses for the dogs, obtained and fastened the dog tags on the collars of the dogs, he had complied with all the requirements of the law. The statute, Code, sec. 4467, reads as follows:

"If any person maliciously administer poison to or expose it with intent that it shall be taken by any horse, cattle, or other beast of any other person; or if he poison or kill his own horse, cattle or other beast for the purpose of defrauding any insurer thereof; or if any person maliciously shoot, stab, cut or wound any horse, mule, or cattle of any person with intent to kill or injure the same, he shall be confined in the penitentiary not less than two nor more than ten years. And if any person unlawfully shoot, stab, cut, or wound any horse, mule, or cattle of any person, or unlawfully and maliciously shoot, stab, cut or otherwise wound or poison any fowl of another, or any dog of another which has been listed or assessed for taxation, with intent to maim, disfigure, disable or kill the same, he shall be guilty of a misdemeanor."

The revisors of the Code of 1919 rewrote section 4467. They made substantial changes, adding the latter portion. They said, "As to acts made unlawful by the latter part of the section the revisors have extended the protection to fowls and to dogs listed or assessed for taxation. * * * " The offense was reduced to a misdemeanor.

It is the language of the latter portion of the statute which now concerns the court. The statute, in the light of the facts in this case, has never been before this court for construction in so far as we are advised. This case appears to be one of first impression.

The Commonwealth contends that the particular language, "And, if any person unlawfully shoot, stab, cut, or wound any horse, mule, or cattle of any person, or unlawfully and maliciously shoot, stab, cut, or otherwise wound or poison any fowl of another, or any dog of another which has been listed or assessed for taxation, with intent to maim, disfigure, disable or kill the same, he shall be guilty of a misdemeanor", is complied with when the owner of a dog goes to the office of the treasurer of the county, secures and pays for the dog license and attaches the dog tag to the dog collar.

Counsel for the accused contends that the license for a dog is not comprehended under section 4467; that it is authorized under section 3305 (62) of the Game, Inland Fish and Dog Code; that section 4467 requires that a dog must be actually listed or assessed for a tangible personal property tax, and not merely licensed, and that the language of section 4467 in this respect is too plain for any reasonable doubt.

Securing a license for a dog is one thing, while listing or assessing it for taxation is quite another and different thing. The difference has been specifically recognized by our legislature. The statutes which provide for licenses for dogs are found in the Game, Inland Fish and Dog Code, chapter 130, while the statutes authorizing the listing or assessing property for taxation, and all related statutes, are found in what is known as the Tax Code of Virginia. The title of the Tax Code, "To revise, simplify, arrange, and consolidate into one act the general tax and revenue statutes of the Commonwealth, which act shall constitute and be designated and cited as 'the Tax Code of Virginia' ", clearly indicates that all of the statutes relating to listing, assessing and taxing all subjects of taxation are to be found within that Code. By express language, the statutes authorizing the licensing of dogs are excluded from the Tax Code. See index to Tax Code, (1942), Dogs, page 383.

Another significant comment which may be made disclosing a legislative intent to distinguish the license for a dog from listing or assessing it for taxation is found in a consideration of this language of the statute, " * * * any fowl of

another, or any dog of another which has been listed or assessed". We are not aware of any requirement that the owner of fowl must obtain a license for them. Listing or assessing fowl for taxation could not mean that this provision would be satisfied by obtaining a license for fowl, because none is authorized by any statute. Under section 4467 a license is not required either for dogs or fowl. In order to maintain a prosecution the command of the statute is that both fowl and dogs must be listed or assessed for taxation before one may be prosecuted for maliciously and unlawfully injuring or killing them.

The judge of the trial court was in error when he stated that there was no provision for listing or assessing dogs for taxation. Upon the form provided by the State for making a return of tangible personal property, blank space is provided for classification of the various kinds of personal property, and the first item of classification on the form is "Livestock and Domestic Animals". Under this item of the return it is clearly seen that dogs should be listed or assessed for taxation.

Under Code, section 3305 (69) the dogs involved in this case were tangible personal property, expressly made so by the very terms of the statute. A property right in a dog which has been licensed is again recognized in Code, sec. 3305 (61). Under section 310 of the Tax Code all personal property, which includes dogs that have been licensed, must be assessed for taxation, and under section 307 of the Tax Code a return of such property must be furnished the Commissioner of the Revenue by the owner. It is not shown that Mr. Adams had listed or assessed his dogs for taxation.

Courts must construe statutes according to the language used by the legislature. Where the language is clear and plain, courts do not look for ambiguities in order to apply certain rules of construction. The words "listed or assessed" for taxation have a well recognized meaning. They are commonly used to express the thought that personal property is to be or is being placed on the roll of tangible personal property, to be taxed upon its value.

Just why the legislature, in section 4467, made it a condition that dogs must be listed or assessed for taxation before a prosecution could be maintained for their malicious and unlawful wounding or killing is no concern of the court. A dog maliciously and unlawfully injured which has been licensed but not listed or assessed for taxation, does not meet the condition of the statute. If the legislature intended to punish one who unlawfully and maliciously wounds a dog which had been only licensed, it would have used apt language to have embraced such a dog. It could have simply written in the act "licensed" in the place of "listed or assessed", or it could have added to "listed or assessed" the words "or licensed". This, the legislature did not do.

Unless there were proof beyond a reasonable doubt that the dogs of Adams were listed or assessed for taxation within the express language of section 4467, there could be no lawful conviction of the accused under that statute. There being no such proof, the conviction cannot stand.

Courts are not permitted to rewrite statutes. This is a legislative function. The manifest intention of the legislature, clearly disclosed by its language, must be applied. There can be no departure from the words used where the intention is clear. A penal statute cannot be extended by implication, or be made to embrace cases which are not within its letter and spirit. Such statutes are always construed strictly against the State and in favor of the liberty of the citizen. *Faulkner* v. *South Boston*, 141 Va. 517, 127 S. E. 380; *McKay* v. *Commonwealth*, 137 Va. 826, 120 S. E. 138; *Boyles* v. *Roanoke*, 179 Va. 484, 19 S. E. (2d) 662.

The judgment of the court below is reversed, and the warrant dismissed.

*Reversed.*