COURT OF APPEALS OF VIRGINIA


Present:    Judges Frank, Clements and Senior Judge Willis
Argued by teleconference


DJUANA COOPER

                                                          OPINION BY
v.        Record No. 2836-03-4                    JUDGE ROBERT P. FRANK
                                                       NOVEMBER 16, 2004
ALF ADLER, M.D., THE ADLER CENTER FOR
  WOMEN'S HEALTH, P.L.C, PETER A. BRYCE, M.D.,
  CHRISTINE POLESKY, CNMW, POTOMAC HOSPITAL
  CORPORATION OF PRINCE WILLIAM COUNTY, AND
  VIRGINIA BIRTH-RELATED NEUROLOGICAL INJURY FUND


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Gerald R. Walsh (Gerald R. Walsh, P.C., on briefs), for appellant.

            Marc A. Brown (Stephen L. Altman; Hamilton, Altman, Canale &
            Dillon, L.L.C., on brief), for appellees Alf Adler, M.D. and The
            Adler Center for Women's Health, P.L.C.

            Michael E. Olszewski (Richard L. Nagle; Hancock, Daniel,
            Johnson & Nagle, P.C., on brief), for appellee Potomac Hospital
            Corporation of Prince William County.

            (Susan L. Mitchell; McCarthy, Massey & Mitchell, P.C., on brief),
            for appellee Peter A. Bryce, M.D.  Appellee Peter A. Bryce, M.D.
            submitting on brief.

            (Jerry W. Kilgore, Attorney General; Judith Williams Jagdmann,
            Deputy Attorney General; Edward M. Macon, Senior Assistant
            Attorney General; Scott John Fitzgerald, Assistant Attorney
            General, on brief), for appellee Virginia Birth-Related
            Neurological Injury Compensation Fund.  Appellee Virginia
            Birth-Related Neurological Compensation Fund submitting on
            brief.

            No brief or argument for appellee Christine Polesky, CNMW.

        Djuana Cooper (Cooper) appeals a decision from the Virginia Workers' Compensation

Commission (commission) awarding benefits to her decedent infant son, Amori, pursuant to the

Virginia Birth-Related Neurological Injury Compensation Act (Act).  Code §§ 38.2-5000 to 38.2-5021.  Cooper claims the commission erred in:  (1) adjudicating her common law claim of emotional distress; (2) transforming her common law claim into a claim for her infant child; (3) determining it had jurisdiction to preclude her from prosecuting her civil claim in circuit court and finding the Act was her exclusive remedy regarding her common law claim; and (4) determining the infant had suffered a "birth-related neurological injury" when Cooper's motion for judgment alleged no cause of action on behalf of the infant.  On cross-appeal, Potomac Hospital contends Cooper cannot pursue this appeal since she did not give notice of appearance as required by Code § 8.01-273.1.  The commission determined that Code § 38.2-5002 gave the commission authority to adjudicate the claim of the infant and that the remedy afforded the infant foreclosed Cooper's common law claim.  For the reasons stated, we affirm the commission's ruling.

## I.  PROCEDURAL HISTORY AND BACKGROUND

Amori Cooper was born on March 29, 2000 at Potomac Hospital in Prince William County.  During delivery he suffered oxygen deprivation and died on September 13, 2000.  On March 15, 2002, Ms. Cooper filed a motion for judgment in the Circuit Court of Prince William County alleging that during labor and delivery the named defendants negligently injured her fetus *in utero* thus causing her emotional distress.

She pled in her motion for judgment:

> 14.  During her labor and delivery on March 29, 2000, Djuana L. Cooper was subjected to a dangerous labor which resulted in the birth of her fetus in an injured condition and she has suffered emotional distress as a result and such emotional distress will continue in the future and substantially affect her emotional well being in many respects.

>          *          *          *          *          *          *          *

25. From the period of March 29, 2000 to the present, the plaintiff has suffered severe emotional distress due to the preventable injury to her fetus and such damage will continue in the future and adversely affect her mental well being.

26. But for the defendants' joint or concurring breaches of their respective duties, as set forth above, Djuana L. Cooper's fetus would not have been injured in utero and in the delivery process and Djuana L. Cooper would not have suffered emotional distress as a result of her fetus being permanently injured.

Pursuant to Code § 8.01-273.1[1] and at the request of the defendants, the circuit court referred the matter to the Workers' Compensation Commission for a determination of whether the case falls within the jurisdiction of the Virginia Birth-Related Neurological Injury Compensation Act. The deputy commissioner entered an order on October 2, 2002 directing counsel for the infant to file all relevant documents with the commission. Counsel for Ms. Cooper responded to the deputy by letter dated October 14, 2002, maintaining that the infant, Amori, was neither his client nor a plaintiff in the Motion for Judgment filed in the circuit court. A hearing was held before the deputy on February 18, 2003 and, over objection of counsel, the deputy allowed counsel for Ms. Cooper to participate in the hearing. The deputy found that the commission had jurisdiction to decide this case on referral from the circuit court,

---

[1] Code § 8.01-273.1 states in part:

A. In any civil action, where a party, who is a participating hospital or physician as defined in § 38.2-5001, moves to refer a cause of action to the Workers' Compensation Commission for the purposes of determining whether the cause of action satisfies the requirements of the Virginia Birth-Related Neurological Injury Compensation Act (§ 38.2-5000 et seq.), the court shall forward the motion to refer together with a copy of the motion for judgment to the Commission and stay all proceedings on the cause of action pending an award and notification by the Commission of its disposition; provided, however, that the motion to refer the cause of action to the Workers' Compensation Commission shall be filed no later than 120 days after the date of filing a grounds of defense by the party seeking the referral.

that the infant suffered a birth-related neurological injury, and that the infant was entitled to an award.

Ms. Cooper appealed the decision to the full commission for a determination whether the commission has jurisdiction over the cause of action alleged in her Motion for Judgment. The commission addressed two issues: (1) whether the infant decedent sustained a "birth-related neurological injury" as defined by Code § 38.2-5001; and (2) whether the Act constitutes Ms. Cooper's exclusive remedy against those petitioners participating in the Program as to her claim for emotional distress. The full commission affirmed the deputy's decision and determined that Amori qualified for benefits under the Act[2] and that Ms. Cooper's common law action was barred. Her remedy against the participating parties was limited to the benefits afforded under Code § 38.2-5002(B).[3] The commission concluded:

> Thus, the plain language of the statute excludes "all other rights and remedies" of a mother of an infant who has sustained a birth-related neurological injury to the extent that the mother is seeking to recover damages associated with her infant's injury. Here, the infant decedent's mother alleged in her Motion for Judgment that she has suffered emotional distress associated with the injury to her child. She is not seeking to recover damages associated with her own personal physical injuries or her emotional distress resulting from the medical care that was rendered to her. Under the circumstances, her remedy against the participating Petitioners is limited to the benefits to which she is entitled under the act.

## II. ANALYSIS

Appellant's assignments of error and the various subparts contained in her brief can be distilled to several issues. First, does the commission have the jurisdiction to decide whether the

---

[2] Appellant does not contest that the infant sustained a birth-related neurological injury as defined by Code § 38.2-5001.

[3] We note that the commission found that The Adler Center for Women's Health, P.L.C. and Christine Polesky, CNMW, are not participants in the Program and Ms. Cooper's causes of action against them do not satisfy the requirements of the Act.

- 4 -

Act is appellant's exclusive remedy? Second, if so, does the Act preclude her common law cause of action of emotional distress? Third, can the commission make an award to the infant when no such claim was made on behalf of the infant?

The appellant argues that the Workers' Compensation Commission lacked jurisdiction to adjudicate her individual and nonderivative common law causes of action seeking damages for her emotional distress. The commission, she claims, is without the power or authority to transform her personal right of action into a claim, under the Act, on behalf of her son, Amori. Appellees collectively argue that Ms. Cooper's claim for emotional distress falls under, but is precluded by, the Act. We agree with appellees.

In order to resolve the issues in this case we must first look at the history of the Virginia Birth-Related Neurological Injury Compensation Act. Enacted by the General Assembly in 1987, it provides claimants with a no-fault remedy for compensation for qualified injuries. See Code § 38.2-5002.[4] The Act also affords potential tort defendants (at least those who contribute voluntary assessments to the Fund under Code § 38.2-5015) with an absolute immunity to civil malpractice liability for these overall injuries. See Code § 38.2-5002(B).

The Birth Injury Program was intended to remove the covered malpractice lawsuits from the judicial system and provide an alternative to compensate the plaintiff for his or her medical-related injury. To be eligible for the Program, an infant must demonstrate an injury

---

[4] Code § 38.2-5002, as it was in effect at the time of the birth, provided in pertinent part:

B. Except as provided in subsection D, the rights and remedies herein granted to an infant on account of a birth-related neurological injury shall exclude all other rights and remedies of such infant, his personal representative, parents, dependents or next of kin, at common law or otherwise arising out of or related to a medical malpractice claim with respect to such injury.

meeting the definition of a birth-related neurological injury, and the obstetrical services must have been performed by a physician or at a hospital that specifically participates in the Birth Injury Program. Because the Program was designed as a "no-fault" system of compensation, decisions regarding acceptance into the Program are not based on a finding of negligence. By delivering an infant in a participating hospital and/or through a participating physician, the baby's family automatically waives the right to bring a medical malpractice lawsuit against the participating physician or hospital if the baby incurs a birth injury that meets the definition in the Code. See Joint Legislative Audit and Review Commission, Review of the Virginia Birth-Related Neurological Injury Compensation Program, p. ii (January 2003); see also Wolfe v. Virginia Birth-Related Neurological Injury Compensation Program, 40 Va. App. 565, 584, 580 S.E.2d 467, 476 (2003) ("The immunity from suit provided by the Act applies to all participating physicians.").

> The Act generally provides the sole remedy for infants who have incurred a birth-related neurological injury caused by a "participating physician" or a "participating hospital," and bars infants who have sustained injuries of this nature from maintaining a common law tort action against such a "participating physician" or "participating hospital."

Central Virginia Obstetrics v. Whitfield, 42 Va. App. 264, 271, 590 S.E.2d 631, 635 (2004) (quoting Berner v. Mills, 265 Va. 408, 411, 579 S.E.2d 159, 160 (2003)); see Code § 38.2-5002(B). "The Commission has exclusive jurisdiction to decide whether an infant's claim lies within the purview of the Act. See Code § 38.2-5003." Berner, 265 Va. at 411, 579 S.E.2d at 160.

## A. Jurisdiction

In this case, Code § 8.01-273.1 required the trial court to refer the case to the commission "for the purposes of determining whether the cause of action satisfies the requirements of the . . . Act[.]" The commission then had to decide two issues:

(1) Whether the infant decedent sustained a birth-related neurological injury as defined by the Act, and

(2) Whether the Act constitutes Ms. Cooper's exclusive remedy against those petitioners participating in the Program.

The first issue is not on appeal. As to the second issue, appellant contends the commission does not have jurisdiction to determine the exclusivity of the Act. Clearly, Code § 8.01-273.1(A) confers upon the commission the authority to determine "whether the cause of action satisfies the requirements of the . . . Act." Prior to the enactment of that statute in 1999, the Supreme Court had held in Gibson v. Riverside Hospital, 250 Va. 140, 458 S.E.2d 460 (1995), that the circuit court must determine whether an infant's injuries came under the exclusive provisions of the Act. The clear language of Code § 8.01-273.1(A) alters the Gibson decision. We conclude that the commission has the sole authority to determine whether the cause of action "satisfies the requirements" of the Act. Code § 8.01-273(A). If that determination is in the affirmative, the Act is the exclusive remedy for all claimants, no matter the identity of the claimant or the cause of action.

The appellant argues that the commission can consider only claims brought by, or on behalf of, infants. She contends the commission is without authority to consider a claim brought on her own behalf. We disagree. Code § 8.01-273.1 provides for a referral for the commission to determine whether "the cause of action satisfies the requirements of the . . . Act." Indeed, the commission did in fact determine that her cause of action satisfied the requirements of the Act.

B. Claim for Emotional Distress

The Act expressly provides that, with certain exceptions not relevant here, "the rights and remedies herein granted . . . shall exclude all other rights and remedies of such infant, his personal representative, parents, dependents, or next of kin, at common law or otherwise arising out of or related to a medical malpractice claim with respect to [a birth-related neurological]

injury." Code § 38.2-5002(B). The statute, in addressing the exclusivity of the Act, encompasses not only "rights and remedies" of the infant, but also a number of other potential claimants, including parents, as long as the claim arises out of or is related to the medical malpractice claim. Code § 38.2-5002(B).

Clearly, the Act focuses on the origin of the claim, not the parties who bring the claim nor the cause of action alleged. We must "construe a statute to promote the end for which it was enacted." Mayhew v. Commonwealth, 20 Va. App. 484, 489, 458 S.E.2d 305, 307 (1995). Therefore, we should read the statute "to give reasonable effect to the words used 'and to promote the ability of the enactment to remedy the mischief at which it is directed.'" Id. (citation omitted). When the language of a statute is unambiguous, courts are bound by the plain meaning of that language and may not assign a construction that amounts to holding that the General Assembly did not mean what it actually has stated. Williams v. Commonwealth, 265 Va. 268, 271, 576 S.E.2d 468, 470 (2003) (citations omitted).

The plain language of Code § 38.2-5002(B) excludes recovery for any claims by the infant's "personal representative, parents, dependents or next of kin" arising from or related to the birth-related neurological injury whether for the infants' injuries or for injuries of the parent. The General Assembly expressly intended that rights and remedies of certain specified persons *other* than the injured infant would be excluded in return for an award of benefits on behalf of the infant.

The express words of the statute also make plain that the category of rights and remedies waived or excluded are those "arising out of or related to a medical malpractice claim." Code § 38.2-5002(B). The phrase "arising out of" implicates a causation requirement and has been construed as referring to the "origin or cause of the injury." Bradshaw v. Aronovitch, 170 Va. 329, 335, 196 S.E. 684, 686 (1938). The issue here is whether a mother's right to compensation

for emotional distress resulting from neurological birth-related injuries sustained by her child was intended to fall within the confines of rights and remedies excluded by the statute.

The focus of Ms. Cooper's cause of action against the defendants was that Amori was delivered negligently causing him to suffer neurological injuries, thus causing her emotional distress. Her motion for judgment unambiguously related her emotional distress to the injury caused to her infant. But for the injury to the child, appellant would have no claim of emotional distress.[5] Ms. Cooper's emotional distress flowed naturally from and was incidental to the birth-related neurological injury to her child. Because Ms. Cooper's claim plainly arises out of the alleged medical malpractice during the labor and delivery of her baby, and is otherwise related to such a claim of malpractice, the language of the statute expressly precludes Ms. Cooper's common law claim for emotional distress.

Appellant cites the 2003 amendments to Code § 38.2-5002(B) to support her position. After the 2003 amendments, Code § 38.2-5002(B), with the amendments interlineated, reads:

> Except as provided in subsection D, the rights and remedies herein granted to an infant on account of a birth-related neurological injury shall exclude all other rights and remedies of such infant, his personal representative, parents, dependents or next of kin, at common law or otherwise arising out of or related to a medical malpractice claim with respect to such injury to the infant, including any claims by the infant's personal representative, parents, dependents or next of kin that, by substantive law, are derivative of the medical malpractice claim with respect to the infant's injury, including but not limited to claims of emotional distress proximately related to the infant's injury. This subsection shall not be construed to exclude other rights and remedies available to the infant's mother arising out of or related to a physical injury, separate and distinct from an injury to the infant, that is suffered by the infant's mother during the course of the infant's delivery.

---

[5] Appellant conceded at oral argument that Ms. Cooper would not have had a claim if the fetus had not been injured.

Appellant contends that since the 2003 amendments specifically exclude claims of parents that are "derivative claims" and claims of "emotional distress," it follows that the statute, prior to the amendments, provides a basis for finding that any claims of emotional distress by a parent were not excluded by the statute.

Legislation is presumed to effect a change in the law unless there is clear indication that the General Assembly intended that the legislation declare or explain existing law. Boyd v. Commonwealth, 216 Va. 16, 20, 215 S.E.2d 915, 918 (1975) (*per curiam*). Here, there is a "clear indication" that the legislature simply explained and clarified existing law. The pre-2003 amended statute employed the phrase "arising out of or related to a medical malpractice claim" as a basis for preempting a parent's claim under the Act. The amendment preempted a parent's claim that is "derivative of the medical malpractice claim." The amendment also preempted "claims of emotional distress proximately related to the infant's injury." A derivative claim is one having no origin in itself, but one owing its existence to a preceding claim. Black's Law Dictionary 443 (6th ed. 1990), cited in Mahony v. Becker, 246 Va. 209, 212, 435 S.E.2d 139, 141 (1993).

> Manifestly, any injury or damages they have suffered are secondary to and arise from the tortious acts committed against their daughter. See Bulala v. Boyd, 239 Va. 218, 230, 389 S.E.2d 670, 676 (1990) (any claim father may have for emotional distress as the result of injury to child "wholly derivative" of the child's claim); Speet v. Bacaj, 237 Va. 290, 298, 377 S.E.2d 397, 401 (1989) (any claim of parents for emotional distress caused by injuries negligently inflicted on child during birth process "wholly derivative" of child's claim); Norfolk S. Ry. v. Fincham, 213 Va. 122, 128, 189 S.E.2d 380, 384 (1972) (parent's cause of action for medical and incidental expenses as the result of injury to child "a derivative action").

Mahony, 246 Va. at 212, 435 S.E.2d at 141.

Just as the pre-2003 statute required causation to preempt a parent's claim, the 2003 amendment preempts a parent's cause of action for emotional distress "proximately related to the

infant's injury." Thus, the statute before and after the 2003 amendment made the Act the exclusive remedy for any claim of a parent that was causally related to the child's injury. We conclude the 2003 amendment affords no support to appellant's position.

Appellant further maintains her cause of action for emotional distress is an independent, non-derivative claim maintaining that an injury to her fetus, as part of her body, is an independent injury to her. Appellant cites Fairfax Hospital System v. McCarty, 244 Va. 28, 419 S.E.2d 621 (1992); Modaber v. Kelley, 232 Va. 60, 348 S.E.2d 233 (1986); and Bulala v. Boyd, 239 Va. 218, 389 S.E.2d 670 (1990), to support her position. Clearly, these cases do stand for the proposition that a mother has an individual cause of action for emotional distress as a result of injury to her fetus. However, none of these cases arose under the Act. Thus, these cases are of no value in determining the viability of appellant's arguments. Under the Act, the proper analysis is not whether the mother had an independent cause of action, but rather, whether her claim arose out of or is related to the medical malpractice claim.

## C. "Unwilling Claimant"

Finally, appellant contends the commission had no authority to convert her personal claim of emotional distress to a claim on behalf of the infant. Again, we must look to the preemptory nature of the Act. We start with the language of Code § 8.01-273.1, the vehicle by which the commission determines whether an action brought in circuit court comes within the purview of the Act. Under the statutory scheme, once the matter is referred to the commission, and notices of appearances are filed,

> the moving party shall provide the Commission with an original and five copies of the following: appropriate assessments, evaluations, and prognoses and such other records obtained during discovery and are reasonably necessary for the determination of whether the infant has suffered a birth-related neurological injury. The medical records and the pleadings referenced in this subsection shall constitute a petition as referenced in § 38.2-5004.

> The moving party shall be reimbursed for all copying costs upon entry of an award of benefits as referenced in § 38.2-5009.

Code § 8.01-273.1(B).

The petition, as referenced in Code § 38.2-5004, is the initial pleading that brings a claim before the commission. Thus, in the context of a civil action brought in circuit court, and referred to the commission, the filing of the medical records and circuit court pleadings brings the claim of the infant before the commission.

Once the matter is properly before the commission, Code § 38.2-5008 requires the commission to determine, among other things, if the "injury claimed is a birth-related neurological injury." If so, the commission awards compensation pursuant to Code § 38.2-5009. Through this mechanism, an infant who otherwise has not filed a claim on his or her own behalf may become the "unwilling claimant" and his remedy shall be to the exclusion of all other claims "arising out of" a medical malpractice claim with respect to such injury. Code § 38.2-5002(B). This reasoning conforms with the purpose and intent of the Act, which is to compensate families of infants who sustain covered birth-related injuries. See Virginia Birth-Related Neurological Injury Compensation Program v. Young, 34 Va. App. 306, 311-12, 541 S.E.2d 298, 301 (2001) ("The purpose of [the Act] is to implement a social policy of providing compensation to families whose neonates suffer birth-related neurological injuries.").

Surely, the commission did not scour the Commonwealth to find potential claimants. Appellant, the infant's mother, sought to pursue a recovery for injury to her infant child. For tactical reasons, appellant rejected the compensation afforded under the Act and sought relief in circuit court for her emotional distress caused by injury to her infant. The "participating physicians" sought refuge under the Act.

Once the matter was properly before the commission, it correctly determined the issues set forth in Code § 38.2-5008. The commission did not err in awarding benefits to the infant pursuant to Code § 38.2-5009.

### III. STANDING TO PARTICIPATE IN THE APPEAL

On cross-appeal, appellee Potomac Hospital contends that Ms. Cooper was not properly before the commission and we should not consider her appeal. Potomac argues that Ms. Cooper did not timely file her notice of appearance with the commission pursuant to Code § 8.01-273.1(B). The applicable code section provides in pertinent part:

> B. . . . [T]he clerk of the circuit court shall file with the Workers' Compensation Commission within thirty days a copy of the motion for judgment and the responsive pleadings of all the parties to the action. The clerk shall copy all counsel of record in the civil action on the transmittal letter accompanying the materials being filed with the Workers' Compensation Commission. *All parties to the civil action shall be entitled to participate before the Commission upon filing a notice of appearance with the Clerk of the Commission within twenty-one days after receipt of the transmittal letter to the clerk of the circuit court.*

(Emphasis added).

Potomac Hospital does not contend the notice provision is jurisdictional. See <u>Kidder v. Virginia Birth-Related Neurological Injury Compensation Program</u>, 37 Va. App. 764, 560 S.E.2d 907 (2002) (failure of Program to file timely response required by Code § 38.2-5004(A) is not jurisdictional).

After the commission received the referral under Code § 8.01-273.1(B), the commission directed the parties to file documents relating to the case. Appellant's counsel responded to the commission's order by his letter of October 14, 2002:

> Your October 2, 2002 Order provides that "Counsel for the infant complainant is directed to file all documents relating to this case with Lou-ann D. Joyner, Clerk of the Commission, within twenty-one days of the date of this Order." If you intended this provision of your Order to apply to me, I wish to point out to you

that in Law No. 55806 I am Counsel for the Plaintiff Djuana L. Cooper. By writing to you regarding your October 2, 2002 letter, I am not filing a notice of my appearance in this proceeding, but rather I am making a good faith effort to point out to you certain matters for your consideration.

Since the plaintiff Djuana L. Cooper was not the moving party referred to in Va. Code § 8.01-273.1B, I do not believe it would be appropriate at this point in time for the Commission to direct me as her counsel to file anything with the Clerk of the Commission in this case.

Nevertheless, appellant appeared and participated at the hearing before the commission.

The commission found counsel's October 14, 2002 letter complied with the notice provisions of the statute:

By letter dated October 14, 2002, and within twenty-one days of the transmittal of the motion for judgment from the Circuit Court to the Commission, Mr. Walsh notified the Commission that he represented Ms. Cooper in connection with the causes of action that she alleged in her Motion for Judgment. Despite the fact that Mr. Walsh specifically claimed not to be noting his appearance before the Commission in the October 14th letter, we conclude that his timely written notice to the Commission of his representation of Ms. Cooper associated with her emotional distress claims - that had been referred to the Commission - constitutes sufficient compliance with Code § 8.01-273.1 to allow Ms. Cooper's participation in this appeal.

In suggesting that the appellant failed to give proper notice of her appearance, Potomac Hospital equates the notice requirements of Code § 8.01-273.1 with the requirement that a defendant must file a responsive pleading to a lawsuit. As such, "'[a]ny action on the part of defendant, except to object to the jurisdiction, which recognizes the case as in court, will amount to a general appearance.'" Brown v. Burch, 30 Va. App. 670, 677, 519 S.E.2d 403, 406 (1999) (quoting Maryland Casualty Co. v. Clintwood Bank, 155 Va. 181, 186, 154 S.E. 492, 494 (1930) (citation omitted)).

The purpose of the notice requirement is to advise the commission and all parties who are the participants before the commission. Despite opposing counsel's protestation, appellant's

- 14 -

counsel clearly indicated he was participating in the matter before the commission even if in a limited basis. His October 14, 2002 letter constituted a general appearance. <u>See generally</u> <u>Ceyte v. Ceyte</u>, 222 Va. 11, 14, 278 S.E.2d 791, 792 (1981) (any action taken by a litigant which recognizes the case as before the court amounts to a general appearance unless such action's *sole* purpose is to contest jurisdiction). At the hearing of this matter on February 18, 2003, Mr. Walsh clearly indicated that he was participating at least to the extent that he tried to convince the commission it had no authority to adjudicate Ms. Cooper's claim.

The commission found that Mr. Walsh's timely written notice to the commission of his representation of Ms. Cooper associated with her emotional distress claim constituted sufficient compliance with Code § 8.01-273.1. We find that Mr. Walsh's appearance by letter, along with his oral presentation at the hearing, was sufficient to satisfy Code § 8.01-273.1(B), and the commission did not err in allowing Ms. Cooper to participate in the appeal.

## IV. CONCLUSION

For the reasons stated, we find that Ms. Cooper does not have an independent right or remedy against appellees Alf Adler, M.D., Peter A. Bryce, M.D., Potomac Hospital Corporation, and the Virginia Birth-Related Neurological Injury Compensation Fund for her emotional distress associated with the birth of her son. We note that the commission found that The Adler Center for Women's Health, P.L.C. and Christine Polesky, CNMW, are not participants in the Program and Ms. Cooper's causes of action against them do not satisfy the requirements of the Act. Accordingly, we affirm the decision of the commission with regard to appellees Alf Adler, M.D., Peter A. Bryce, M.D., Potomac Hospital Corporation, and the Virginia Birth-Related Neurological Injury Compensation Fund. We remand to the Workers' Compensation

Commission for the resolution of any remaining issues against respondents not deemed

participants in the Program.

<u>Affirmed and remanded.</u>