COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Beales and McCullough
Argued at Alexandria, Virginia


WOMEN'S HEALTHCARE ASSOCIATES, INC.

v.        Record No. 1180-14-4

VALERIE MUCCI AND
  VIRGINIA BIRTH-RELATED NEUROLOGICAL INJURY COMPENSATION PROGRAM


ANGELA C. BESS, M.D.

                                              OPINION BY
v.        Record No. 1191-14-4        JUDGE ROBERT J. HUMPHREYS
                                              MARCH 3, 2015

VALERIE MUCCI AND
  VIRGINIA BIRTH-RELATED NEUROLOGICAL INJURY COMPENSATION PROGRAM


LOUDOUN HOSPITAL CENTER, d/b/a
  INOVA LOUDOUN HOSPITAL, AZAM DABIRZADEH, R.N., AND
  ALYSIA WARFIELD, R.N.

v.        Record No. 1211-14-4

VALERIE MUCCI AND
  VIRGINIA BIRTH-RELATED NEUROLOGICAL INJURY COMPENSATION PROGRAM


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION[1]

        Paul T. Walkinshaw (Glen H. Sturtevant; Rawls McNelis + Mitchell,
        on briefs), for appellant Women's Healthcare Associates, Inc.

        Susan L. Mitchell (Altman, Spence, Mitchell & Brown, P.C., on
        brief), for appellant Angela C. Bess, M.D.

        William L. Carey (Rodney G. Leffler; Alexa K. Mosley; Leffler &
        Mosley, on brief), for appellants Loudoun Hospital Center d/b/a
        Inova Loudoun Hospital, Azam Dabirzadeh, R.N., and Alysia
        Warfield, R.N.

        [1] Because these three separate but related appeals share the same factual background and
seven assignments of error, we have consolidated these appeals for the purpose of this opinion.

Laurie A. Amell (Shulman, Rogers, Gandal, Pordy & Ecker, on briefs), for appellee Valerie Mucci.

Carla R. Collins, Assistant Attorney General-III (Mark R. Herring, Attorney General; Rhodes B. Ritenour, Deputy Attorney General; Catherine Crooks Hill, Senior Assistant Attorney General, on briefs), for appellee Virginia Birth-Related Neurological Injury Compensation Program.

Appellants Women's Healthcare Associates, Inc. ("WHA"), Angela C. Bess, M.D. ("Dr. Bess"), and Loudoun Hospital Center d/b/a Inova Loudoun Hospital, Alysia M. Warfield, R.N., and Azam Dabirzadeh, R.N. ("Inova"), (collectively "appellants") appeal the decision of the Virginia Workers' Compensation Commission (the "commission") transferring Valerie Mucci's ("Mucci") personal injury claims to the Circuit Court of Loudoun County (the "circuit court"). The commission affirmed the deputy commissioner's finding that Mucci's claimed injuries were separate and distinct from her infant son's neurological injury, and thus did not fall under the exclusive remedy of the Virginia Birth-Related Neurological Injury Compensation Act of 1987 (the "Act"). For the following reasons, this Court affirms the commission's decision to transfer Mucci's personal injury claims to the circuit court.

## I. BACKGROUND

Enacted by the General Assembly in 1987, the Act provides claimants with a no-fault remedy for compensation for qualified injuries. See Code § 38.2-5002. The Act also affords potential tort defendants (at least those who choose to participate in the Birth-Related Neurological Injury Compensation Fund under Code § 38.2-5015) with an absolute immunity to civil malpractice liability for these injuries. See Code § 38.2-5002(B). By delivering an infant in a participating hospital and/or through a participating physician, the infant's family automatically waives the right to bring a medical malpractice lawsuit against the participating physician or hospital if the infant incurs a birth injury that meets the definition in the Code.

- 2 -

<u>Wolfe v. Va. Birth-Related Neurological Injury Comp. Program</u>, 40 Va. App. 565, 584, 580 S.E.2d 467, 476 (2003).

Mucci went to Loudoun Hospital Center on February 22, 2006 for a scheduled labor induction. Mucci was approximately forty weeks pregnant and was considered "postdate." Cervidil was placed to ripen Mucci's cervix followed by a Pitocin infusion to initiate uterine contractions. Mucci was monitored by Dr. Bess and other healthcare providers at Inova throughout the labor process. As labor progressed, the monitoring machines began to show signs of fetal distress, including decelerations in the fetal heart rate. As a result, Dr. Bess attempted a vacuum extraction delivery, which proved unsuccessful. Dr. Bess then performed a cesarean section to deliver Mucci's infant son at 6:56 p.m. on February 23, 2006. Mucci's son was born with neurological injuries, which all parties agree qualify as birth-related neurological injuries under the Act. The commission admitted Mucci's son into the Virginia Birth-Related Injury Compensation Program (the "Program") on May 1, 2012.

In addition to her son's injuries, Mucci claims that she suffered injuries during the course of the labor and delivery of her son. In her complaint and subsequent bill of particulars in the circuit court, Mucci stated that her uterine tissue was injured as a result of Dr. Bess's failure to "perform the cesarean section that was indicated" and by her decision to "continue Pitocin induction for an extended period of time instead of discontinuing it." Mucci also claimed that these medical decisions also caused uterine hyperstimulation and prolonged labor and resulted in worry and anxiety for Mucci's own well-being. Inova filed a motion to refer the matter to the commission pursuant to the Act, which the circuit court granted on May 25, 2010.

In a February 16, 2011 pleading to the commission, Mucci further explained that her claim was for "physical injuries to herself—a damaged uterus, physical pain, and permanent scarring and disfigurement of her uterus, which occurred during the course of labor and delivery"

and emotional distress "related to the permanent injury of her uterus and the surrounding tissues, rather than emotional distress related to the injuries to her son." On the morning of the April 10, 2012 evidentiary hearing to determine jurisdiction of Mucci's claims, the parties exchanged expert designations. Appellants objected to the deputy commissioner's consideration of Mucci's expert opinions, arguing that the opinions were materially distinct from the claims pled in Mucci's complaint and bill of particulars in the circuit court. Mucci presented two expert reports from Dr. Richard Stokes and Dr. Douglas R. Phillips.

According to Dr. Stokes, Mucci experienced "prolonged hyperstimulation and tetanic contractions" which "caused increased stretching of the lower uterine segment and disruption of connective tissue resulting in damage to the uterine tissue." Dr. Stokes concluded that Mucci suffered "severe pain and suffering, as well as substantial concern for her own medical well-being" as a result of the prolonged hyperstimulation and tetanic contractions. Dr. Phillips's report summarized Mucci's injuries:

> Ms. Mucci suffered injury to her uterine tissue, endured many hours of tetanic contractions, and ultimately had to undergo an emergency cesarean section delivery which resulted in permanent disfigurement and scarring to her uterus. The prolonged hyperstimulation resulted in uterine hypoperfusion and tissue damage and caused Ms. Mucci to suffer significant pain and suffering. Furthermore, Ms. Mucci became a high risk patient for subsequent pregnancies and required that she undergo a repeat cesarean section procedure for the delivery of her second child on February 19, 2009 at George Washington University Hospital.

Appellants relied on the expert opinion of Dr. Norman Armstrong, who stated that Mucci's medical records indicate that Mucci's cesarean section in 2006 was "a direct result of the nonreassuring fetal heart rate and signs of fetal distress. The C-section was unrelated to the mother's individual status at the time. It was performed in a standard manner and its sequelae was typical of any C-section." Ultimately, the deputy commissioner overruled appellants' objection, allowing Mucci's expert reports to the extent they addressed whether Mucci's injuries

were derivative of the infant's injuries. The deputy commissioner found that Mucci's claimed injuries were separate and distinct from her son's neurological injuries and therefore were not limited to the exclusive remedy provision of Code § 38.2-5002(B). The commission affirmed this ruling on May 29, 2014, and transferred Mucci's claims to the circuit court for resolution in that forum.

## II. ANALYSIS

### A. The Consideration of Expert Reports for Determining Jurisdiction

#### Standard of Review

In their first assignment of error, appellants challenge the commission's finding that Mucci could offer expert opinions as part of her petition under Code § 8.01-273.1. Pursuant to Code § 8.01-273.1(B), the party seeking referral must provide the commission with "appropriate assessments, evaluations, and prognoses and such other records obtained during discovery and are reasonably necessary for the determination of whether the infant has suffered a birth-related injury. The medical records and the pleading referenced in this subsection shall constitute a petition as referenced in § 38.2-5004." Because this assignment of error poses a question of law, the Court reviews the commission's decision *de novo*. NiSource, Inc. v. Thomas, 53 Va. App. 692, 711, 674 S.E.2d 581, 591 (2009).

Appellants collectively claim that the commission erred in considering Mucci's two expert reports arguing that the petition is comprised only of the initial and responsive pleadings of the parties and medical records. Specifically, appellants argue that the commission erred in

allowing Mucci to substitute new allegations in her expert reports that were not previously raised in her complaint or bill of particulars in the circuit court.[2]

Even without considering the expert reports, the commission found that "[t]here is ample information in the record transferred to the commission regarding the alleged injuries for which Valerie Mucci seeks a remedy." When there is evidence to support the commission's findings, they will not be disturbed on appeal, even though there may be evidence in the record to support a contrary finding. Caskey v. Dan River Mills, Inc., 225 Va. 405, 411, 302 S.E.2d 507, 510-11 (1983). Even when the deputy commissioner considered only the documents appellants rely on, the commissioner still arrived at the same conclusion—that Mucci's alleged injuries are non-derivative of her son's injuries.

Notably, appellants, not Mucci, referred this case to the commission. In interpreting Code § 38.2-5001, the commission has found that healthcare providers cannot be a claimant under this statute because they cannot represent the interests of the infant. In re: Subham Patel, No. B-09-05, 10 WC UNP B0905 (Va. Workers' Comp. Comm'n Nov. 22, 2010). This conclusion is "consistent with the language in § 38.2-5004(B) and (C) which says 'upon receipt of the petition *or* the filing of a claim.'" Id. at *11 (emphasis added). Because Mucci's claims were transferred to the commission by appellants, Mucci did not file a complaint before the commission. Instead, appellants, who sought referral to the commission pursuant to the Act, filed a petition.

Code § 8.01-273.1(B) mandates that the party seeking referral provide the commission with "appropriate assessments, evaluations, and prognoses and such other records obtained

---

[2] Assignment of Error #1: "The [c]ommission erred when it found that Ms. Mucci could raise, and the [c]ommission could consider, new allegations regarding the nature, scope and/or cause of Ms. Mucci's alleged injuries that were not set forth in the Complaint or Bill of Particulars."

during discovery and are reasonably necessary for the determination of whether the infant has suffered a birth-related injury. The medical records and the pleading referenced in this subsection shall constitute a petition as referenced in § 38.2-5004." Therefore, the "petition" includes all medical records and expert reports that can be characterized as assessments, evaluations, prognoses, and records that can be obtained during discovery. Appellants argue that Mucci's expert reports do not meet the definition of a "petition," because the expert reports relate to Mucci's injuries and not her infant son's. However, appellants are unable to point to any statutory language or case law that supports the proposition that the deputy commissioner is limited to considering only the "petition" to make a jurisdictional determination.

The General Assembly has authorized the commission "to hear and pass upon all claims filed pursuant to this [Act]. The [c]ommission may exercise the power and authority granted to it in Chapter 2 of Title 65.2 as necessary to carry out the purposes of this chapter." Code § 38.2-5003. The commission has concluded that the purpose of the Act is to "implement a social policy of providing compensation to families whose neonates suffer birth-related neurological injuries." Va. Birth-Related Neurological Injury Comp. Program v. Young, 34 Va. App. 306, 311-12, 541 S.E.2d 298, 301 (2001). Consistent with this purpose, the commission has been granted broad discretion in reviewing all claims brought under the Act. There is no statutory language that limits the commission's authority to consider the entire record when making a jurisdictional determination.

Finally, the commission's consideration of the entire record is consistent with the less rigid, informal nature of the pleading requirements of the commission. "Pleading requirements in administrative proceedings before the Industrial Commission are traditionally more informal than judicial proceedings . . . rigid or technical rules of pleading, evidence, or practice in the conduct of hearings shall not apply so long as the procedures adopted protect the substantial

- 7 -

rights of the parties." Sergio's Pizza v. Soncini, 1 Va. App. 370, 376, 339 S.E.2d 204, 207 (1986) (internal citations omitted). Thus, the commission did not err in considering other documents in the record when making its determination of jurisdiction.

### B. Issues Regarding Sufficiency of Notice

Appellants also claim that the commission erred in finding that issues regarding sufficiency of notice of Mucci's claim are matters to be resolved by the circuit court upon remand.[3] While appellants argue that Mucci's theory of negligence expressed in her complaint and bill of particulars was different than the theories advanced by her two experts in their reports, this distinction was never relevant to the commission's inquiry. Because the Program created by the Act was designed as a "no-fault" system of compensation, decisions regarding acceptance into the Program are not based on a finding of negligence. Cooper v. Adler, 44 Va. App. 268, 276, 604 S.E.2d 747, 751 (2004).

The commission's task was never to assess whether any of the appellants were negligent with regard to Mucci's injuries. Instead, the commission's sole task was to determine if Mucci's injuries were "separate and distinct" from her son's neurological injuries within the meaning of the Act. The deputy commissioner acknowledged this limited inquiry, stating, "I'm going to allow the expert reports only to the extent that they address the nature of the injury and whether or not they're probative in my determination of whether the injury is derivative." The fact that the expert reports expressed a different theory of negligence than stated in the circuit court pleadings had no relevance to the commission's determination of whether Mucci's injuries were separate and distinct from her infant's injuries.

---

[3] Assignment of Error #2: "The [c]ommission erred when it ruled that the issues regarding the sufficiency of notice of Ms. Mucci's claim, as provided in the Complaint and Bill of Particulars, are 'matters of procedure and proof, which are issues to be resolved by the circuit court upon remand,' and not matters to be resolved by the [c]ommission prior to, and for the purpose of, determining jurisdiction."

Furthermore, appellants were on notice of Mucci's specific allegations of injury. It is clear from the medical records and bill of particulars that Mucci seeks damages for her alleged permanent disfigurement and damage to her uterus, and pain and worry about her own well-being. Mucci's February 16, 2011 pleading to the commission (submitted more than a year before the evidentiary hearing), further explained that her claim is for "physical injuries to herself—a damaged uterus, physical pain, and permanent scarring and disfigurement of her uterus, which occurred during the course of labor and delivery" and emotional distress "related to the permanent injury of her uterus and the surrounding tissues, rather than emotional distress related to the injuries to her son."

Appellants were provided with every opportunity to conduct discovery prior to the evidentiary hearing that the parties, themselves, requested. "Any party . . . upon application to the commission setting forth the materiality of the information requested, serve interrogatories or cause the depositions of witnesses residing within or without the Commonwealth to be taken . . . ." Code § 38.2-5007. Noting the appellants' failure to conduct discovery, the commissioner stated at the evidentiary hearing,

> The [c]ommission has discovery rules, we allow discovery, nobody has written asking me for any discovery. The parties were certainly welcome to take any depositions they wanted to take . . . to propound interrogatories, request for production of documents. I mean all of that has been free and available to everyone. So I don't feel that there's any surprise here today.

Additionally, any variance in the theory of negligence alleged in the complaint and expert reports was not relevant to the commission's jurisdictional determination. Proving such theories would be a necessary requirement for Mucci to prove in circuit court, not before the commission. Therefore, the commission did not err in finding that any issues of proof or notice are best left to the circuit court upon remand.

- 9 -

C. Mucci's Separate and Distinct Injury Claims

Standard of Review

Appellants further argue that the commission erred in its application of the facts of the present case to the law set forth in the Act. As a result, this alleged error is a mixed question of fact and law and is therefore reviewed *de novo*. Young v. Va. Birth-Related Neurological Injury Comp. Program, 46 Va. App. 558, 569, 620 S.E.2d 131, 137 (2005). Appellants' third, fourth, fifth, sixth, and seventh assignments of error claim the commission erred in interpreting Code § 38.2-5002(B). The statute specifically states,

> [T]he rights and remedies herein granted to an infant on account of a birth-related neurological injury shall exclude all other rights and remedies of such infant, his personal representative, parents, dependents or next of kin, at common law or otherwise *arising out of* or related to a medical malpractice claim with respect to such injury to the infant, including any claims by the infant's personal representative, parents, dependents or next of kin that, by substantive law, are derivative of the medical malpractice claim with respect to the infant's injury, including but not limited to claims of emotional distress proximately related to the infant's injury. This subsection shall not be construed to exclude other rights and remedies available to the infant's mother arising out of or related to a physical injury, *separate and distinct* from an injury to the infant that is suffered by the infant's mother *during the course of* the infant's delivery.

Code § 38.2-5002(B) (emphasis added).

When construing a statute, "'[c]ourts are not permitted to rewrite statutes. This is a legislative function. The manifest intention of the legislature, clearly disclosed by its language, must be applied. There can be no departure from the words used where the intention is clear.'" Barr v. Town & Country Props., Inc., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990) (quoting Anderson v.Commonwealth, 182 Va. 560, 566, 29 S.E.2d 838, 841 (1944)). Courts must also assume that the legislature chose, with care, the words it used when it enacted the relevant statute, and are bound by those words when interpreting the statute. Id.

## 1. Statutory Interpretation of "arising out of," "derivative," and "separate and distinct"

Appellants have advanced three specific assignments of error to the commission's interpretation of Code § 38.2-5002(B) as it relates to whether a mother's injury claim is separate and distinct from the infant's injury. First, appellants claim that the commission erred in finding that Mucci's alleged injuries are "separate and distinct" from the child's neurological injuries.[4] Appellants also assert that the commission erred in finding that Mucci's claim does not "arise out of" or relate to a medical malpractice claim with respect to the infant, or is not "derivative of" the medical malpractice claim with respect to the infant's injury.[5] Finally, appellants argue that uncontroverted evidence shows that the timing of and the decision to perform a cesarean section were dictated solely by the needs of the infant, and therefore any injuries to Mucci's uterus occurred as a direct result.[6]

The statute makes clear, "This subsection shall not be construed to exclude other rights and remedies available to the infant's mother arising out of or related to a physical injury, separate and distinct from an injury to the infant that is suffered by the infant's mother during the course of the infant's delivery." Code § 38.2-5002(B). The preceding sentence of the code section expressly states that the remedies granted to the infant shall exclude all other rights and

---

[4] Assignment of Error #3: "The [c]ommission erred when it interpreted and applied Code Section 38.2-5002(B) in such a manner as to conclude that Ms. Mucci's alleged injuries are separate and distinct from the infant's neurological injury."

[5] Assignment of Error #4: "The [c]ommission erred when it ruled that Ms. Mucci's claim does not arise out of or relate to a medical malpractice claim with respect to the infant, or is not derivative of the medical malpractice claim with respect to the infant's injury, pursuant to Code Section 38.2-5002(B)."

[6] Assignment of Error #5: "The [c]ommission erred when it failed to consider the uncontroverted evidence that the fact of and timing of the cesarean section were dictated solely by the medical needs and condition of the infant, and any alleged injury to Ms. Mucci's uterine tissue occurred as a direct, natural result."

remedies that may be available to other parties with respect to the infant's injury "arising out of or related to a medical malpractice claim with respect to such injury to the infant . . . that . . . are derivative to the medical malpractice claim with respect to the infant's injury." Id. Read together, it follows that the "separate and distinct" claims of an injured child's mother that are not subject to the exclusive remedy of the Act, are distinct from the "derivative claims" "arising out of" a claim of injury to the infant, which are encompassed by the Act.

Appellants mistakenly argue that the correct inquiry under the Act is whether the claim of the parent arises out of or is related to the infant's medical malpractice claim. The term "medical malpractice claim" is qualified with the phrase "with respect to such injury to the infant." Code § 38.2-5002(B). Therefore, the medical malpractice claim must be causally related to the injury of the infant. This interpretation is consistent with this Court's previous holding that the phrase "arising out of" implicates a causation requirement and has been construed as referring to the "origin or cause of the injury." Cooper, 44 Va. App. at 278, 604 S.E.2d at 752 (citing Bradshaw v. Aronovitch, 170 Va. 329, 335, 196 S.E. 684, 686 (1938)). Thus, this Court must consider the origin of Mucci's injury rather than merely the origin of Mucci's medical malpractice claim as appellants suggest. The Virginia Supreme Court has considered the meaning of a derivative claim, holding it to be a claim "having no origin in itself, but one owing its existence to a preceding claim." Mahony v. Becker, 246 Va. 209, 212, 435 S.E.2d 139, 141 (1993) (citing Black's Law Dictionary 443 (6th ed. 1990)).

In analyzing whether a mother's injury was separate and distinct from her infant's injury, this Court rejected a mother's claim for emotional distress stemming from her child's neurological injuries reasoning, "but for the injury to the child, appellant would have no claim of emotional distress." Cooper, 44 Va. App. at 279, 604 S.E.2d at 752. In that case, this Court found that the mother's injuries "flowed naturally from and was incidental to the birth-related

- 12 -

neurological injury to her child." Id. In other words, the mother's claim was derivative of her

child's injury claim and only existed because her child was born with neurological injuries.

Conversely, Mucci's claim for injuries to her uterine tissue and emotional stress relating

to those injuries did not occur "but for" the birth-related neurological injury to her son. These

claimed injuries could have also occurred with the delivery of an otherwise healthy child. The

commission found that the "injuries [Ms. Mucci] allegedly sustained were not caused by the loss

of oxygen to [her infant son's] brain but rather by the induction of labor and subsequent cesarean

section. Her injuries did not flow naturally and incidentally from those her child suffered." It is

clear from the face of the statute that injuries sustained by a mother that are not incidental to the

child's neurological injuries are not governed by the Act. The record is clear that Mucci's claims

are for separate injuries relating to her uterine tissue.

### 2. Statutory Interpretation of "during the course of delivery"

Appellants' sixth assignment of error alleges that the commission incorrectly interpreted

the injury timing restrictions of Code § 38.2-5002(B), an issue of first impression for this Court.

Specifically, appellants argue that the commission erred in concluding that Mucci's alleged

injuries sustained during labor, and not delivery, are beyond the commission's jurisdiction.[7]

Words in a statute are to be construed according to their ordinary meaning, given the

context in which they are used. Grant v. Commonwealth, 223 Va. 680, 684, 292 S.E.2d 348, 350

(1982). "Where the legislature has used words of a plain and definite import the courts cannot

put upon them a construction which amounts to holding the legislature did not mean what it has

actually expressed." Watkins v. Hall, 161 Va. 924, 930, 172 S.E. 445, 447 (1934). The term

"delivery" is defined as "the procedure of delivering the fetus and placenta by manual,

---

[7] Assignment of Error #6: "The [c]ommission erred when it interpreted and applied Code Section 38.2-5002(B) in such matter as to conclude that Ms. Mucci's alleged injuries sustained during labor, and not delivery, are beyond the [c]ommission's jurisdiction."

instrumental, or surgical means."[8] Webster's Third New International Dictionary 597 (3d ed. 1993).

Appellants limit the statutory language by focusing solely on the term "delivery" to conclude that Mucci's injury claims are encompassed by the Act. Yet, the plain language of the statute is, "during the course of the infant's delivery." Code § 38.2-5002(B). Adopting appellants' proposed interpretation of this statutory language to mean only the birth of a child, would render the phrase, "during the course of" completely meaningless. If the General Assembly intended to limit the statutory exclusion to a mother's injuries only occurring at the precise moment of delivery, the statute could have been easily written as "at delivery" or "at birth." Nonetheless, the legislature specifically included the phrase "during the course of," which is consistent with a more expansive inclusion of time, place, and circumstances.

Virginia jurisprudence is clear that, "where the question involves an interpretation which is within the specialized competence of the agency and the agency has been entrusted with wide discretion by the General Assembly, the agency's decision is entitled to special weight in the courts." Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 244, 369 S.E.2d 1, 8 (1988).

> The rationale of the statutory scheme is that the [administrative agency] shall apply expert discretion to matters coming within its cognizance, and judicial interference is permissible only for relief against the arbitrary or capricious action that constitutes a clear abuse of the delegated discretion. The reviewing judicial authority may not exercise anew the jurisdiction of the administrative agency and merely substitute its own independent judgment for that of the body entrusted by the Legislature with the administrative function.

---

[8] Webster's Third New International Dictionary 597 (3d ed. 1993), also defines "delivery" as "the expulsion or extraction of a fetus and its membranes." "Delivery" is also defined as "giving birth to a child, together with the placenta and membranes, by a parturient woman." Taber's Cyclopedic Medical Dictionary 640 (22d ed. 2013).

- 14 -

Va. Alcoholic Beverage Control Comm'n v. York St. Inn, Inc., 220 Va. 310, 315, 257 S.E.2d 851, 855 (1979).[9]

The commission has exclusive jurisdiction to decide whether an infant's claim lies within the purview of the Act. Code § 38.2-5003. The legislature entrusted the commission with broad discretion in interpreting and enforcing the Act. In this role, the commission has consistently held that the key inquiry in determining whether a mother's claim is barred depends on whether it arises out of, or relates solely to the infant's injury, not whether the mother's injury occurred at any particular time during the labor and delivery process. See In re: Robert Chad Lowery, File No. B-04-09, 05 WC UNP B0409 (Va. Workers' Comp. Comm'n Apr. 29, 2005); see also In re: Nina Scott, File No. B-07-05, 07 WC UNP B0705 (Va. Workers' Comp. Comm'n Nov. 20, 2007).

As applied to Code § 38.2-5002(B), this Court affirms the commission's determination that limiting the interpretation of the language "during the course of delivery" to only the moment of the infant's birth would create an inconsistency with the definition of "birth related neurological injury," which can occur during labor, delivery, and resuscitation. This Court appropriately defers to the commission's consistent interpretation of the Act and its medical terms such as "during the course of delivery."

### 3. Commission's Finding Regarding Mucci's Remedy

In their final assignment of error, appellants claim that the commission erred by basing its ruling that it lacks jurisdiction over Mucci's claims on "the fact that applying the Act to

---

[9] This standard of review was not altered by the 2013 amendments to Code § 2.2-4027. The General Assembly left intact the language that requires courts to "take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted." Code § 2.2-4027.

Ms. Mucci's personal injury claim would give her no remedy even if she proves her case."[10] Appellants misstate the commission's holding. The commission, in interpreting the purpose of the Act, correctly reasoned that the General Assembly did not intend to deprive a mother of a remedy for her own separate physical injuries simply because those injuries, like her child's neurological injuries, may have also been attributed to medical malpractice. This statement is consistent with the commission's finding, "we do not believe that the [G]eneral [A]ssembly intended to offer blanket immunity for all physical injuries, including those of the mother." Lowery, 05 WC UNP B0409, at *7. Instead, the Act makes it explicitly clear that non-derivative injuries to the mother are exceptions to the exclusive remedy provision of the Act.

### III. CONCLUSION

Finding that the commission did not err in concluding that Mucci's claims were separate and distinct from her infant son's neurological injuries and thus, were not subject to the exclusive remedy of the Act, we affirm the commission's finding and decision to transfer Mucci's personal injury claims to the circuit court for resolution.

Affirmed.

---

[10] Assignment of Error #7: "The [c]ommission erred when it based its ruling that it lacks jurisdiction over Ms. Mucci's claim on the fact that applying the Act to Ms. Mucci's personal injury claim would give her no remedy even if she proves her case."