REGULAR VETERANS ASSOCIATION, LADIES
AUXILIARY

v.

COMMONWEALTH OF VIRGINIA

No. 1589-92-3

REGULAR VETERANS ASSOCIATION, POST #8

v.

COMMONWEALTH OF VIRGINIA

No. 1590-92-3

Decided July 19, 1994

COUNSEL

Wayne O. Withers, Jr. (Hoyett L. Barrow, Jr.; Gardner, Gardner, Barrow & Sharpe, P.C., on brief), for appellants.

Robert H. Anderson, III, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

WILLIS, J.—In a consolidated jury trial, Regular Veterans Association, Post #8 (Post #8), was convicted of two counts of awarding bingo jackpot prizes exceeding $1000, in violation of Code § 18.2-340.9(G)[1], and Regular Veterans Association, Ladies Auxiliary (Ladies Auxiliary), was convicted of one count of the same offense. On appeal, Post #8 and Ladies Auxiliary contend that the evidence was insufficient to support their convictions. They argue that the trial court erred in permitting prizes awarded in games designated "Players Game Jackpot" to be included in the computation of total jackpot awards. We find no error and affirm the judgments of the trial court.

Code § 18.2-340.9(G) provides, in pertinent part:

No organization shall award any bingo prize money or any merchandise valued in excess of the following amounts: . . . (iii) no bingo jackpot of any nature whatsoever shall exceed $1,000, nor shall the total amount of bingo jackpot prizes

---

[1] By Acts 1993, chapter 973, Code § 18.2-340.9 was recodified and subsection G was designated subsection H. This opinion will refer to subsection G, the codified designation in effect at the time of the events and convictions embraced in this appeal.

awarded in any one calendar day exceed $1,000.

On August 13, 1991, Virginia State Police Special Agent M.C. Peters, who was investigating bingo operations in Martinsville, attended a bingo event conducted by the Ladies Auxiliary. The program listed twelve regular games. Games 7 and 12 were designated "Jackpot." Cards permitting participation in these games were purchased as parts of the packs relating to the overall program. Each "Jackpot" game provided three prizes: (1) Double, paying $50; (2) Triple, paying $50; and (3) Coverall, paying $400.

Game 11 was designated "Players Game Jackpot." Cards permitting play of this game were purchased separately. The game designated "Players Game Jackpot" provided three prizes: (1) Double, paying $100; (2) Triple, paying $100; and (3) Coverall, paying "Not to exceed $1,000."

On August 14, 1991 and on October 9, 1991, Special Agent Peters attended bingo events conducted by Post #8. Each program provided eleven games. Games 5 and 11 were designated "Jackpot." Each paid $500. Game 10 was designated "Players Game Jackpot" and paid "Up to $1,000."

Special Agent Peters testified that to win a prize designated "Double," a player must develop on his card two straight lines of five covered numbers each. To win a prize designated "Triple," the player must develop three such lines. To win a prize designated "Coverall," the player must succeed in covering all the numbers on his card.

Special Agent Peters testified that at the August 13 event conducted by the Ladies Auxiliary, the game operator announced, before the sale of cards for the "Players Game Jackpot," that the prize for that game would be $500. He testified that at the August 14 event, conducted by Post #8, the game operator, before the sale of cards for the "Players Game Jackpot," announced that the prize would be "in the $600 to $800 range." He testified that at the October 9 event, conducted by Post #8, the game operator announced, before the sale of cards for the "Players Game Jackpot," that prizes for that game would be $25 for single bingo, $50 for double bingo, $100 for triple bingo, and $700 for the jackpot.

The Commonwealth contends that all prizes awarded in "jackpot" games should be included in calculating the total "jackpot" prizes for that day's program. Thus, it argues, the Ladies Auxiliary awarded jackpot prizes of $500 each in games 7 and 12 at its August 13 event. It argues that if the Ladies Auxiliary awarded any further jackpot prize on that occasion, it was thereby guilty of the offense charged. We disagree.

Code § 18.2-340.1(5) defines "Jackpot."

"Jackpot" means a bingo card played as a part of a bingo game defined in subdivision 2 in which all numbers on the card are covered, each number being selected at random, and with no free or "wild" numbers.

Single, double, and triple bingo lines do not satisfy this definition. Therefore, prizes awarded for those accomplishments are not "jackpot" prizes. Only prizes awarded for success at "coverall" qualify as "jackpot" prizes.

At its August 13 event, the Ladies Auxiliary awarded $800 in "jackpot" prizes in games 7 and 12. At its August 14 and October 9 events, Post #8 awarded $1,000 in "jackpot" prizes in games 5 and 11.

The Commonwealth contends that the prizes awarded by the Ladies Auxiliary in its "Players Game Jackpot" (game 11) and by Post #8 in its "Players Game Jackpots" (game 10 on each occasion) advanced the total jackpot awards on each occasion beyond the $1,000 permitted by Code § 18.2-340.9(G), thus constituting the subject offenses. The Commonwealth argues that even if the subsidiary prizes are set aside, the $500 jackpot prize awarded by the Ladies Auxiliary on August 13 in game 11 advanced its total jackpot awards on that occasion to $1300. It argues that the $600 to $800 jackpot prize awarded by Post #8 on August 14 in game 10 brought the total jackpots awarded on that occasion to $1600 to $1800. It argues that setting aside subsidiary prizes, the $700 jackpot prize awarded by Post #8 for game 10 on October 9 brought the total jackpot prizes awarded on that occasion to $1700.

The Ladies Auxiliary and Post #8 argue that the jackpot prizes awarded in the games designated "Players Game Jackpot" should

not be included in the calculation of jackpot prizes. They cite Code § 18.2-340.9(H)[2], which provides:

> Any bingo game in which all the gross receipts from players for that game are paid as prize money back to the players shall not be subject to the limitations of subdivision G of this section, but there shall not be more than one such game per calendar day of play and the prize money from any such game shall not exceed $1,000.

Bobby Holiday, Commander of Post #8, of which Ladies Auxiliary is a subsidiary organization, testified that "Players Game Jackpot" meant "Winner Take All" and that in those games, all the card sale proceeds were returned as prizes. Mr. Holiday acknowledged that he did not himself keep the financial records of the bingo operations and could not vouch that each day's "Players Game Jackpot" prize equaled or exceeded that day's receipts from the sale of cards for the "Players Game Jackpot." No financial records relating to the August 13, August 14, or October 9 events were produced. When shown reports relating to events of other days, Mr. Holiday acknowledged that none showed equal receipts and disbursements for the "Players Game Jackpot" games, that on some days receipts exceeded prizes, and that on other days prizes exceeded receipts. He opined that on an ongoing basis, it was "basically an averaging situation."

We hold that "an averaging situation" does not satisfy the definition of Code § 18.2-340.9(H). If the total prizes awarded in the game equal or exceed the gross receipts from the sale of cards, those prizes will accomplish the repayment of all the gross receipts as prize money back to the players, and that game will fall within the exemption of Code § 18.2-340.9(H). However, if the total prizes paid for a game are less than the gross receipts from card sales for that game, that game does not fall within the exemption of the statute, and any jackpot prize awarded in that game must be included in computing total jackpot prizes for the purposes of Code § 18.2-340.9(G).

---

[2] By Acts 1993, chapter 973, Code § 18.2-340.9 was recodified and subsection H was designated subsection I. This opinion will refer to subsection H, the codified designation in effect at the time of the events and convictions embraced in this appeal.

■ Code § 18.2-340.9(G)(iii) defines completely the offense therein specified and its required elements of proof. Negation of circumstances invoking Code § 18.2-340.9(H) is not one of those elements. *See McGhee v. Commonwealth*, 219 Va. 560, 562, 248 S.E.2d 808, 810 (1978).[3] Therefore, the Ladies Auxiliary and Post #8 bore the burden of producing evidence in support of that defense sufficient to raise a reasonable doubt of their guilt. They failed to do so.

Mr. Holiday's testimony did not relate specifically to the games in question. His conclusion that the receipts/prize ratio was "basically an averaging situation," if correct, does not meet their burden of proof. The records that were produced refuted a consistent return of gross receipts to the players. The announcement of the prize values before the sale of cards established that no relationship existed between gross receipts and prize value determination.

The evidence supports the jury's determination that the "Players Game Jackpot" games did not fall within the definition of Code § 18.2-340.9(H) and that the Ladies Auxiliary and Post #8, on the respective occasions charged against them, awarded jackpot prizes exceeding $1000 in violation of Code § 18.2-340.9(G).

The judgments of the trial court are affirmed.

*Affirmed.*

Koontz, J., concurred.

Benton, J., dissenting.

The indictments charged that on three specified days the organizations operated bingo games and "award[ed] bingo prize money such that the total amount of bingo jackpot prizes awarded in the calendar day exceeded $1000" in violation of Code § 18.2-340.9(G). That provision of the Bingo and Raffles law reads in pertinent part as follows:

No organization shall award any bingo prize money or any merchandise valued in excess of the following amounts: (i)

---

[3] *McGhee* involved a claim of self-defense. The Supreme Court set forth the criteria for determining when an asserted defense is an affirmative defense, imposing upon the accused the burden of going forward with supporting evidence. We find that rationale applicable to statutory defenses and controlling in this case.

no bingo door prize shall exceed $25, (ii) no regular bingo or special bingo game shall exceed $100, and (iii) no bingo jackpot of any nature whatsoever shall exceed $1,000, nor shall the total amount of bingo jackpot prizes awarded in any one calendar day exceed $1,000.

Code § 18.2-340.9(G).

The practices prohibited by Code § 18.2-340.9(G) are purely statutory. Thus, I agree with the majority that the statutory definition of "jackpot," Code § 18.2-340.1(5), circumscribes the offense that the indictments charged. I do not agree, however, that the Commonwealth proved beyond a reasonable doubt a violation of the statute.

It can be safely said that in Virginia there is no principle more firmly imbedded in the body of the law, or one that has been more often stated, than the principle that in every criminal case the evidence of the Commonwealth must show, beyond a reasonable doubt, every material fact necessary to establish the offense for which a defendant is being tried. This burden of proof never shifts. "[A]ny rule of state law which has the ultimate effect of shifting the burden of persuasion to the accused upon [a] critical issue is constitutionally infirm."

*McGhee v. Commonwealth*, 219 Va. 560, 561-62, 248 S.E.2d 808, 810 (1978) (citation omitted).

Nothing in the statutes states that the lawful practice specified in Code § 18.2-340.9(H) is an affirmative defense to be borne by the organization when it is prosecuted for violation of the Bingo and Raffles laws.[4] Indeed, the lawful practice is specifically con-

---

[4] At the time pertinent to the charged offense, Code § 18.2-340.9(H) read in pertinent part as follows:

Any bingo game in which all the gross receipts from players for that game are paid as prize money back to the players shall not be subject to the limitations of subdivision G of this section, but there shall not be more than one such game per calendar day of play and the prize money from any such game shall not exceed $1,000.

Although the appellants in this case state that Code § 18.2-340.9(H) creates an affirmative defense to Code § 18.2-340.9(G), this Court is not required to adhere to the erroneous legal conclusions of the parties. Moreover, however one chooses to label Code § 18.2-340.9(H), appellants' brief to this Court contends that the Commonwealth failed to meet its burden of production and burden of persuasion regarding Code § 18.2-340.9(H). Only

tained in the text of the statute that lists the prohibited practices, Code § 18.2-340.9, and is specifically designated as a subsection of that statute. This placement of the lawful practice within the statute that defines the offenses mandates the conclusion that disproof of the lawful practice is an element of the offense. In other jurisdictions, courts have addressed this principle as follows:

> In a few instances, such as here, the negation of what is facially a statutory exception is so necessary to a true definition of the offense that the elements of the crime are not fully stated without negation of the "exception." Stated another way, an essential element of a criminal offense is not always expressed in the statutory section defining the offense, but in a few instances may include the negation of an exception to the offense.

*State v. Young*, 406 S.E.2d 758, 774 (W. Va. 1991). *See also State v. Ingram*, 488 A.2d 545, 546-47 (N.J. 1985).

The failure to prove that the game was not operated in accordance with Code § 18.2-340.9(H) was a failure to prove "every fact necessary to constitute the crime with which [the defendants were] charged." *In re Winship*, 397 U.S. 358, 364 (1970). The game practice described by Code § 18.2-340.9(H) is not a mitigating circumstance but rather an explanation of a practice that is not prohibited. Where the legislature has by statute allowed in some circumstances the payment of a larger prize to be lawful and in others unlawful, the prosecutor bears the burden of proving the distinguishing factor.

For the Commonwealth to prove a violation of Code § 18.2-340.9, it must prove that the practices violate all the elements as statutorily mandated. Proof that a defendant violated Code § 18.2-340.9(G) can only be shown by negating the practice permitted by Code § 18.2-340.9(H). Thus, the absence of the practice that is permitted by Code § 18.2-340.9(H) is an element of the statutory offenses prohibited by Code § 18.2-340.9(G).

Moreover, the practice that is permitted by Code § 18.2-340.9(H) is not subjective. Whether the games are operated in a

---

if that Code section constitutes an element of the offense charged must the Commonwealth bear both of those burdens. *Mullaney v. Wilbur*, 421 U.S. 684, 702-03 (1975).

manner consistent with the statute can be ascertained by objective measures. To facilitate enforcement of the statutes, the legislature by statute has required organizations that operate bingo games and raffles to file financial reports and maintain itemized written records of receipts and prizes paid on each day that games are operated. The evidence proved that the City of Martinsville audited the financial records as required by Code §§ 18.2-340.6 and 18.2-340.7. The City's director of finance testified that he had conducted the required audits of the reports that are required to be filed and sent letters to the organizations stating that they were in compliance with the bingo section. He further testified that both organizations had always been in substantial compliance during the period that he had audited their records. The Commonwealth's evidence did not prove otherwise and failed to prove beyond a reasonable doubt violation of the statute.

For these reasons, I would reverse the convictions.