COURT OF APPEALS OF VIRGINIA

Present: Judges Coleman, Koontz and Senior Judge Hodges
Argued at Salem, Virginia

EDWARD JOSEPH MAYHEW, JR.

v.    Record No. 1283-93-3                    OPINION BY
                                    JUDGE LAWRENCE L. KOONTZ, JR.
COMMONWEALTH OF VIRGINIA                   JUNE 13, 1995

            FROM THE CIRCUIT COURT OF THE CITY OF SALEM
                      G.O. Clemens, Judge

      I. Ray Byrd, Jr., for appellant.

      Robert Q. Harris, Assistant Attorney General (James S.
      Gilmore, III, Attorney General, on brief), for appellee.


      Edward Joseph Mayhew, Jr. (Mayhew) appeals his bench trial

conviction for failing to perform a criminal records background

check before making a firearms sale.  See Code § 18.2-308.2:2.

Mayhew asserts that the trial court erred in ruling that sales of

firearms to undercover police officers conducting "sting"

operations are not subject to the exemption for sales to police

officers found in Code § 18.2-308.2:2(I)(ii).  He further asserts

that the trial court erred in finding that the firearm sold was

"from his inventory" as required by the statute.  For the

following reasons, we affirm Mayhew's conviction.
                              I.

                      FACTUAL BACKGROUND

      Mayhew and Anthony Coberly (Coberly) shared a table under

Mayhew's trade name, High Velocity Sales, at the Salem Gun Show

and Sale held at the Salem Civic Center on December 19, 1992.

Mayhew, who at the time possessed a federal firearms dealer's

license, testified that he only sold antique firearms, for which

a dealer's license was not required. Coberly sold toy guns and gun racks. Coberly did not have a license to sell firearms, but testified that he had brought two of his own handguns to the show, intending to try to make "private" sales.

Trooper J. T. Harris was working undercover at the gun show with an investigator from the Bureau of Criminal Investigation. At about 9:30 a.m., the two officers approached the Mayhew/Coberly table and discussed with a "white male with a full beard," the purchase of an MP5.[1] Later in the day, after having first talked with Mayhew on the phone, the officers returned to the table and negotiated with Mayhew the purchase of a Beretta 9mm 92FS semi-automatic pistol. The man with the beard was not present.

Mayhew also gave Harris a Beretta patch and offered him a magazine subscription. Harris then asked Mayhew if he was a firearms dealer, and when Mayhew replied that he was, Harris informed Mayhew that Mayhew had sold a firearm without first making the required background check. Mayhew then claimed that the firearm was not his and that, as he was selling it for someone else, he believed he was not required to run the check.

At the conclusion of the Commonwealth's evidence, Mayhew

---

[1]Although the parties assumed that the "white male" was Coberly, there is no indication in the record that Harris identified Coberly as the first individual he spoke to, nor did Coberly specifically testify that the two officers were among the people who inquired about his guns. Coberly further testified "there was no MP5" but that "we had an HK94, a semi automatic gun similar to an MP5."

asserted that Code § 18.2-308.2:2 exempted sales to police officers.  While conceding that he had no knowledge that Harris was a law enforcement officer, Mayhew asserted that the law contained no limiting language which required knowledge of the purchaser's status as a police officer at the time of the sale.  Mayhew further asserted that the law should be strictly construed until amended by the legislature.  The trial court ruled that the exemption applied only to "official [or knowing]" sales to police.

Coberly testified that he had stepped away from the table to get a cup of coffee just before the undercover officers arrived to purchase the Beretta.  Coberly testified that he owned the Beretta.  He further testified that he had no formal agreement with Mayhew, but that Mayhew "knew the prices [Coberly] was willing to sell the items for."  Coberly further testified that he received all the proceeds from the sale of the Beretta.

At the conclusion of the evidence, Mayhew asserted that because he had established that he acted as an agent in a private sale of a firearm not a part of his inventory, he was not required to perform a background check.  The trial court ruled that the determination of whether the firearm was "from [a dealer's] inventory" was a factual issue and found that the Beretta "became [part of Mayhew's] inventory when it was placed with his [other] inventory and displayed in [an] area under his control."  The trial judge further stated that, "[Mayhew] sold

the gun. . . . [H]is use of the term, 'This is a private sale' to evade the terms of the law is not acceptable . . . ."

## II.

## CONSTRUCTION OF STATUTES CONTAINING EXEMPTIONS

Under familiar principles, penal statutes must be strictly construed against the Commonwealth. Stevenson v. City of Falls Church, 243 Va. 434, 436, 416 S.E.2d 435, 437 (1992). However, when statutory construction is required, we construe a statute to promote the end for which it was enacted, if such an interpretation can reasonably be made from the language used. VEPCO v. Board of County Supervisors, 226 Va. 382, 387-88, 309 S.E.2d 308, 311 (1983); Woolfolk v. Commonwealth, 18 Va. App. 840, 847, 447 S.E.2d 530, 533 (1994). Thus, a statute should be read to give reasonable effect to the words used "and to promote the ability of the enactment to remedy the mischief at which it is directed." Jones v. Conwell, 227 Va. 176, 181, 314 S.E.2d 61, 64 (1984). "Where a particular construction of a statute will result in an absurdity, some other reasonable construction which will not produce the absurdity will be found." Miller v. Commonwealth, 180 Va. 36, 41, 21 S.E.2d 721, 723 (1942).

When construing penal statutes which contain qualifications, exceptions or exemptions to their application, the limiting language may be viewed as a negative element of the offense which the prosecution must disprove. See Regular Veterans Association, Ladies Auxiliary v. Commonwealth, 18 Va. App. 683, 690, 446

-4-

S.E.2d 621, 625 (1994)(Benton, J., dissenting)(citing State v. Young, 406 S.E.2d 758, 774 (W. Va. 1991); State v. Ingram, 488 A.2d 545, 546-47 (N.J. 1985)). Alternately, the court may determine that the exemption is a statutory defense, which the accused can assert to defeat the prima facie case of the prosecution. Regular Veterans, 18 Va. App. at 688, 446 S.E.2d at 624 (where a statute "defines completely the offense therein specified and its required elements of proof[, n]egation of circumstances invoking [an exemption elsewhere in the same Code section] is not one of those elements. [The accused bears] the burden of producing evidence [of the negation of circumstances] sufficient to raise a reasonable doubt of [his] guilt").

In determining whether specific limiting language is an element of the offense or a statutory defense, a court should look both to the intent of the statute as a whole and the ability of the respective parties to assert the existence or absence of the underlying facts sustaining the applicability of the limitation. Accordingly, we should consider

> the wording of the exception and its role in relation
> to the other words in the statute; whether in light of
> the situation prompting legislative action, the
> exception is essential to complete the general
> prohibition intended; whether the exception makes an
> excuse or justification for what would otherwise be
> criminal conduct, i.e., sets forth an affirmative
> defense; and whether the matter is peculiarly within
> the knowledge of the defendant.

Commonwealth v. Stoffan, 323 A.2d 318, 324 (Pa. Super. Ct. 1974); see also State v. Williamson, 206 N.W.2d 613, 618 (Wis. 1973)

-5-

("It is undoubtedly the general rule that the state must prove all the essential facts entering into the description of the offense. But it has been held in many cases that when a negation of a fact lies peculiarly within the knowledge of the defendant it is incumbent on him to establish that fact").

## III.

### EXEMPTIONS FOUND WITHIN CODE § 18.2-308.2:2

It is manifest that Code § 18.2-308.2:2 is a part of a statutory scheme reflecting a legislative purpose to interdict the availability and use of firearms by persons previously convicted of felony offenses. That purpose finds its justification from the lessons of common experience that possession of firearms by felons presents a high risk of harm to others.

To facilitate the accomplishment of this general purpose, the statutory scheme prohibits the possession of a firearm by a convicted felon, Code § 18.2-308.2, the knowing sale or provision of a firearm to a convicted felon, Code § 18.2-308.2:1, and the purchase of a firearm by a "straw man" for the ultimate possession by a convicted felon, Code §§ 18.2-308.2:2(M) and (N). We may reasonably assume that duly licensed firearms dealers are the primary source of firearms lawfully sold, purchased and possessed by others in our society. Such dealers are defined in Code § 18.2-308.2:2(G). Accordingly, the sale or transfer of firearms by firearms dealers presents the logical and reasonable point to interdict the availability of firearms to convicted

-6-

felons.  Thus, Code § 18.2-308.2:2 provides in general terms the procedures to be followed by a firearms dealer to secure a criminal history record check to verify that a potential customer is not a convicted felon and not permitted to possess a firearm. Code §§ 18.2-308.2:2(B) and (C).  Where the licensed firearms dealer fails to make the required criminal history check, Code § 18.2-308.2:2(L) provides that: "Except as provided in § 18.2-308.2:1 [prohibiting any person from knowingly selling a firearm to a person prohibited from possessing a firearm], any dealer who willfully and intentionally sells, rents, trades or transfers a firearm in violation of this [Code] section shall be guilty of a Class 6 felony."

Significantly, the application of Code § 18.2-308.2:2(L) is not limited to those situations in which a firearm is actually sold to a felon, nor could it adequately effect its purpose if it were so limited.  In fact, those instances where a dealer knowingly sells a weapon to a felon, which is punishable under Code § 18.2-308.2:1, are expressly exempted from the application of Code § 18.2-308.2:2(L) by its own terms.  Accordingly, we hold that the specific legislative purpose underpinning Code § 18.2-308.2:2(L), consistent with the general legislative purpose of interdicting the availability and use of firearms by convicted felons, is to prohibit licensed firearms dealers from failing to make the appropriate criminal background check required by Code §§ 18.2-308.2:2(B) and (C).

In this context, we turn now to the exemption on which

Mayhew relies in Code § 18.2-308.2:2(I):

> The provisions of this section shall not apply to (i)
> transactions between persons who are licensed as
> firearms importers or collectors, manufacturers or
> dealers pursuant to 18 U.S.C. § 921 et seq., (ii)
> <u>purchases by or sales to any law-enforcement officer or
> agent of the United States, the Commonwealth or any
> local government</u>, (iii) antique firearms or (iv)
> transactions in any county, city or town that has a
> local ordinance adopted prior to January 1, 1987,
> governing the purchase, possession, transfer,
> ownership, conveyance or transportation of firearms
> which is more stringent than this section.

(Emphasis added.)

Each of these exemptions relates to a factor which is within

the knowledge of the dealer or ascertainable by him at the point

in the transaction where he would normally conduct the required

background check. Moreover, these exemptions provide an excuse

or justification for the failure to perform the required criminal

background check. That requirement is not dependent upon the

outcome or results of the background check. Thus, the exemptions

found in subsection (I) are not negative elements of the offense

that must be proven by the Commonwealth. Rather, they are

circumstances, within the knowledge of the accused, which may be

raised as statutory defenses to the charge that the dealer has

unlawfully failed to obtain the criminal background check

required by Code §§ 18.2-308.2:2(B) and (C). In short, these

exemptions are affirmative defenses for which the accused has the

burden of going forward with supporting evidence. See <u>Regular

Veterans</u>, 18 Va. App. at 688 n.3, 446 S.E.2d at 624 n.3.

Mayhew further asserts that even if the exemptions of subsection (I) are statutory defenses rather than negative elements of the offense, he nonetheless proved as a matter of law the police officer exemption. Mayhew asserts that the language of subsection (L) does not require proof that the sale was made knowingly to the officer under the exemption, only that the sale be a "purchase by . . . any law enforcement officer." In other words, Mayhew asserts that it is legally impossible for a firearms dealer to violate Code § 18.2-308.2:2 when the purchaser is a police officer. We disagree.

As we have noted above, the statute is intended to compel firearms dealers to comply with the requirement to perform background checks. Thus, in construing subsections (I)(ii) and (L), we hold that there is an implicit requirement that the application of the exemption found in the former is limited to circumstances where the dealer knows the purchaser is a police officer at the time of the sale. Cf. Maye v. Commonwealth, 213 Va. 48, 49, 189 S.E.2d 350, 351 (1972)(holding that scienter will be read into the statute by the court when it appears the legislature implicitly intended that it must be proved). In order for a firearms dealer to assert that his or her failure to conduct the requisite background check was permitted pursuant to Code § 18.2-308.2:2(I)(ii), he or she must demonstrate actual knowledge that the exemption applied at the time of the sale. Mayhew concedes he did not know that Harris was a law enforcement

officer, and thus has failed to establish that his failure to conduct the requisite background check was in accord with the exemption.

IV.

INVENTORY/PRIVATE SALE ISSUE

Finally, we turn to Mayhew's assertion that the evidence shows that the weapon was not part of his inventory, that he was acting as Coberly's agent in a private sale and, accordingly, he was not required to conduct a background check. We disagree.

The statute does not define the term "inventory." Accordingly, we may look elsewhere to determine the usual meaning of that term. Inventory is defined by the Uniform Commercial Code, as adopted by this Commonwealth, as "[g]oods . . . held by a person who holds them for sale or lease or to be furnished under contracts of service or if he has so furnished them, or if they are raw materials, work in process or materials used or consumed in a business." Code § 8.9-109. Nothing in this definition requires that inventory be the property of the individual or business holding it out for sale.

The evidence showed that Mayhew was operating the table under his business name; he exercised control and authority over the firearm and its display. This is so even if Coberly owned the firearm. Mayhew held the firearm for sale and negotiated the sale of it to Harris. Accordingly, Mayhew was conducting a sale from his inventory as contemplated by the statute. Cf. United States v. Scherer, 523 F.2d 371, 374 (7th Cir. 1975)(for federal

-10-

firearms transaction recordation requirements it is the act of selling by a dealer and not arbitrary distinctions of location, or business or personal ownership, that brings the dealer within the statute), cert. denied, 424 U.S. 911 (1976).

Mayhew, a licensed firearms dealer, conducted the sale of a firearm from his inventory without first conducting the requisite background check or ascertaining that an exemption from

conducting the check applied to the sale.  His actions constituted a violation of Code § 18.2-308.2:2(L).

For these reasons, we affirm Mayhew's conviction.

Affirmed.