UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges AtLee and Malveaux
Argued at Richmond, Virginia


JAMES DANIEL BEAN

MEMORANDUM OPINION* BY
v.      Record No. 0107-22-2      JUDGE MARY BENNETT MALVEAUX
NOVEMBER 22, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Rondelle D. Herman, Judge

John W. Parsons (John W. Parsons, Attorney at Law, on brief), for
appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


James Daniel Bean ("appellant") was convicted in a bench trial of one first offense and

two subsequent offenses of use of a communication system to solicit a child under the age of

fifteen to engage in sexual acts, in violation of Code § 18.2-374.3(C). On appeal, he argues that

the trial court erred by denying his motion to strike and convicting him when he had been

entrapped by the police. For the following reasons, we affirm the trial court.

I. BACKGROUND

"'In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial.' Accordingly, we regard as

true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be

drawn from that evidence." *Meade v. Commonwealth*, 74 Va. App. 796, 802 (2022) (quoting

*Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

A.  Appellant's Initial Communications with Kylie

In fall 2019, Detective J.S. Wechsler of the Henrico County Police Division served as a member of the Internet Crimes Against Children Task Force.  Wechsler testified that as a task force member, he investigated the online exploitation of children through websites used by people "known to be wanting to have sex or looking to have sex with a child."  One of the websites he investigated was MocoSpace, which Wechsler described as a social media platform whose account holders create personal profiles that are visible to other account holders.

Wechsler created a MocoSpace account for a persona named Kylie Kipling.  Kylie's profile indicated that she was female and eighteen years old, "which is the minimum age that [MocoSpace] will allow" when creating an account.  Wechsler included in the profile several photographs of his colleague, Officer Brittany Pike, who was twenty-five years old.  Kylie's main profile photograph depicted Pike with her face partially obscured by a cat's nose, ears, and whiskers that had been superimposed by a photograph filter.

On October 29, 2019, appellant, a MocoSpace account holder calling himself "blueyesgem," contacted Kylie by sending her a message on the platform.  On MocoSpace, appellant represented that he was a thirty-five-year-old male from New Jersey.  Wechsler testified that after appellant established contact with Kylie, Wechsler sent appellant a cell phone number for Kylie and asked him to text rather than communicate on MocoSpace.  Shortly thereafter, Wechsler received a text message stating, "[h]ey kylie its Jimmy."[1]

Kylie replied to appellant's initial text, and he then asked her what she was doing.  When Kylie told appellant that she was bored, and although she had not raised the subject of school, appellant asked Kylie, in his third text, "why u not in school or are you graduated."  Kylie

---

[1] Police recovered 1,199 texts between Kylie and appellant.  The texts were entered into evidence at trial.

responded that her school was closed for the day. In appellant's seventh and eighth texts, he told Kylie, "be honest with me how old are u . . . . It's ok I know your not 18." When Kylie told appellant that she was "not trying to hide anything I'm almost 15," appellant's response was, "it's ok." These messages were exchanged within the first five minutes of text communications between Kylie and appellant.

Kylie then told appellant that "some people don't wanna talk to me" after she told them her age, to which appellant replied, "[i]t's ok." After approximately fifteen minutes of texting, appellant asked Kylie, "there are lots of pervs on moco please be careful . . . u should make your profile n pics private for your own protection. . . . [Otherwise] be prepared to get dick pics."

One hour after first texting Kylie, appellant asked her "for a favor[.] Send me a selfie of you in your shorts n shirt." Appellant twice reiterated his request over the next few minutes, but Kylie demurred, telling him that "[m]y brother is in the room[.] I can't talk." Appellant replied that he would "love to get to know" Kylie better, but that "we both have to be careful."

A few minutes later, appellant told Kylie that his birthday was June 9, 1984, and asked her for her birthday. When Kylie did not answer the question, appellant restated it several times. Kylie finally told appellant the month and day of her birthday, and appellant responded, "I bet you where born in 2005. N that's ok." Kylie replied, "yes[.] I guess you figured it out." Appellant then asked Kylie if she had a boyfriend yet and stated to her that "we have to be careful no one must find out until we know what we both want from each other." Appellant also asked Kylie what kind of work she would like to do "when you get out of school." During the same conversation, appellant asked Kylie what time her mother would be home. She replied that her mother already was home, "but it's ok I'm in my room." Appellant then asked if he could speak with Kylie by phone. Kylie responded that she should "[j]ust text right now cuz I don't want her to hear me[.] I don't wanna get caught."

Later that evening, appellant and Kylie exchanged further text messages in which appellant said he "love[d] that . . . your showing me you are much more mature than your age n I like that." When Kylie subsequently asked appellant, "R u a cop," appellant replied, "ok that's a new one I would be in jail if I was for talking to u." He also told her, "I am putting so much trust in you because you can get me in so much trouble you know."

## B. Appellant's Telephone Calls and Additional Texts with Kylie

Also on October 29, appellant and Kylie spoke on the telephone. That call was recorded by police and entered into evidence at trial. During the call, thirty-three-year-old Detective Della Strickland pretended to be Kylie. Appellant cautioned Kylie to "be careful" on MocoSpace "unless you want to see a million pictures of guy's dicks . . . . Is that something you want to see?" When Kylie responded, "I have never seen one before," appellant said, "[y]ou're kidding me! . . . I keep forgetting you're only fifteen, sorry." Kylie corrected appellant, stating, "[a]lmost fifteen," and appellant replied, "[t]hat's right."

Appellant also told Kylie, "I know you're not fifteen but I'm gonna treat you like you're older." He also asked her if she'd ever been treated as an adult, as opposed to being "talked down to as a kid." He told Kylie he would "treat [her] like an adult. Is that all right?" before asking her, "[s]o how old are you? Eighteen, right?" When Kylie replied, "[y]ou're funny. I wish I was eighteen," appellant told her, "[s]o do I. So do I." Appellant stated that Kylie needed to "promise [him]" that "it's our secret." He then told Kylie, "[y]ou know I could get in trouble talking to you, correct?" The call ended when Kylie told appellant that her mother was calling and "probably . . . checking on me."

The following morning, Kylie responded to overnight text messages from appellant by telling him that her school was closed again. Appellant then offered to visit Kylie that upcoming weekend, and Kylie told him, "I'd have to keep it secret from my mom." Appellant repeatedly

- 4 -

asked Kylie to call him again, but she said that her brother was "still here" and "I can't right now I'll get caught." Shortly thereafter, appellant asked Kylie if she had ever been kissed. He also asked her if she "like[d] being told what to do is that wh[a]t u like you like it when a guy takes charge." When Kylie responded "[y]es," appellant told her, "[y]ou got it."

Three minutes later, appellant texted Kylie and asked her if she wanted to "honor me and to obey m[e]." When she responded "[y]es," appellant told her, "let's see if u will obey." He then told Kylie to send him some photographs. Among other images, appellant asked that Kylie send "one of [her] sexy legs" and one "[f]rom [the] waist done [sic]." When Kylie asked, "[n]aked?" appellant replied, "[h]ey you s[a]id you where ready to obey me." Although appellant then clarified, "not naked," Kylie told him, "I will." When appellant asked her, "[w]hy would u ask that," Kylie replied, "[c]uz you said sexy legs[.] I thought that's what you wanted." Appellant then asked Kylie again if they could talk, and Kylie told him that she would "try and go to the bathroom" but would "have to be careful." Appellant told her she could "just listen."

Wechsler recorded the subsequent telephone call, and that recording was entered into evidence. During the call, Wechsler did not attempt to speak as Kylie and responded to appellant only by an arranged system of taps indicating "yes" and "no." Appellant told Kylie, "[y]ou do not have to send me, ever, naked pictures, you got that? Well, only if you want to."

Shortly after the call, appellant texted Kylie and asked her to "send me that picture of your sex[y] legs from your panties down." A few minutes later, appellant texted Kylie, "[o]k surprise me I would live [sic] to see your butt in your cute panties or naked whatever you comfortable with." When Kylie asked appellant what he would do with the photographs if she sent him "a nude of my butt," appellant replied that he would "[d]elete them after I see them." He then asked Kylie to go into the bathroom and "take a selfie in mirror naked." When Kylie expressed her concern that the image might end up "on the internet or something," appellant

reassured her that it would not, stating, "I can get i[n] so much trouble do u think I would risk my career my life . . . to do th[a]t[?]"

That afternoon, appellant and Kylie exchanged text messages about appellant coming to visit Kylie. Appellant stated to Kylie that "I treat u older. . . . I want to kiss you hug u n yes make love to you." Kylie then stopped communicating with appellant for some time before texting him, "I'm sorry my mom came home. I had to go in the laundry room." Later that afternoon, appellant texted Kylie that he wanted to

> carry you to the bedroom in my arms and lay you on the bed . . .
> start licking n kissing your feet n toes n work my way up . . . to
> your thighs with small kisses and licking you with my tongue until
> I get into your inner thigh where I want my tongue to touch u for
> the first time n lick you until you have your first orgasm then I
> want to climb on top of you and slowly go inside u n take your
> virginity n make love to you all night long.

Kylie tried to finalize the details of appellant's visit, telling him she could not "keep going back and forth with my mom. She's gonna get suspicious then we're both fucked lol."

In a subsequent text, appellant asked Kylie if she had "ever played with yourself before." When Kylie said that she did not "really know how to do it," appellant told her that he would teach her. He then told her to "loosen [her] pants," "put [her] hand down [her] panties n start rubbing it around softly." Over the next six minutes, appellant provided Kylie with graphic instructions guiding her through her supposed act of masturbation. He then asked Kylie to call him again and agreed that they could communicate through the same system of taps they had used previously. Wechsler recorded that call, and it was entered into evidence at trial. During the call, appellant again guided Kylie, in graphic detail, through a supposed act of masturbation. He also asked her to send him a photograph of her wet finger when she was done. At trial, appellant entered into evidence a photograph of a wet finger that he had received from Kylie.

Wechsler testified that the photograph portrayed the finger of another police officer, who was "probably between 30 and 35" years old at the time the photograph was taken.

Later that day, appellant texted Kylie and asked her whether she had "enjoy[ed] playing with [her]self" and cautioned her, "[j]ust dont pop your cherry[.]  I want the honor of doing that." Appellant and Kylie continued making plans for a meeting, with Kylie telling appellant that she would "have to figure out an excuse and where I'm going.  I can say I'm going to the movies." Appellant responded that it was "[t]o bad u cant tell your mom your going to sleep over [at] a girlfriend house then we can spend the whole night together."

Kylie and appellant continued texting through November 4, 2019.  In one of their later texts, Kylie asked appellant if he could "teach [her] how to drive."  Appellant also told Kylie that "hopefully in years when your 18 n legal we can have a relationship that we [w]ont have to hide."

Appellant was subsequently arrested in New Jersey and extradited to Virginia for trial. When interviewed by Detective Wechsler, he maintained that he and Kylie were engaged in role play where she assumed the character of an underage girl.

C.  Events at Trial and Post-Trial

During cross-examination, Wechsler testified that in addition to the text messages sent directly between appellant's and Kylie's phones, appellant also contacted Kylie via the messaging application "Kik."  The Kik conversation occurred on October 29, 2019, beginning twenty-eight minutes after Kylie and appellant first started texting.  Wechsler testified that he "transition[ed]" the conversation away from Kik and back to "native texting on the [phone] service" and explained that "there [was] a reason for it."  Without objection, Wechsler then testified that "Kik is used within the community of people who operate on MocoSpace because [Kik] is an unstable platform; because if you log out of Kik while you are on your phone, you

eliminate all the messages. They are not recoverable." Additionally, Wechsler stated without objection that "Kik was . . . based out of Canada, which is difficult for law enforcement to send subpoenas or search warrants to. This is known within the community." Accordingly, Weschler would try to transition back to text messaging "because of how Kik operates." Wechsler testified that at no point during the Kik conversation did he indicate that Kylie was older than fourteen or that she was role-playing in a fantasy activity with appellant. During re-direct examination, Wechsler stated that at no time during any of the MocoSpace, Kik, or direct text messages did appellant bring up the subject of role play or say that he would like to role play. Kylie also never stated during their conversations that she was engaged in role play.

After the Commonwealth presented its evidence, appellant moved to strike. The trial court granted the motion with respect to two charges after concluding that on dates alleged in those charges, appellant's actions, "while . . . inappropriate," did not "actually . . . cross over the line pursuant to the statute." The court denied the motion to strike with respect to the three remaining charges, which pertained to appellant's communications with Kylie on or about October 30, 2019.

Appellant presented no evidence and renewed his motion to strike, challenging the sufficiency of the evidence and arguing that the police had engaged in entrapment. The trial court denied the motion, stating that appellant

> had, should have had reason to know that [Kylie] was under the age of fifteen. [Kylie] repeatedly told him that. There were other collateral facts. She was still in school. She hadn't graduated. She was living with her mom. She was very fearful of her mom. She wasn't free to leave the house. She had to ask for permission to go on outings, couldn't talk around her mom, just as a young child would.
>
> [Appellant] would encourage [Kylie] to go into the bathroom so you can talk or just don't say anything, so you won't get in trouble. There was ample information. [Appellant] just chose to disregard that. . . . He made comments at times that he

- 8 -

knew she wasn't eighteen. That was very early on. . . . And the
pictures are not inconsistent with someone who is younger . . . .
[I]t's not inconsistent with a fourteen year old.

Ultimately, the court found that the totality of the evidence "would suggest to [appellant] that I'm not dealing with a grown woman here." With respect to appellant's entrapment argument, the court stated that, "[t]here was a time when the officer [as Kylie] did say naked. That was six hundred and some text messages into this. And I just don't see this as entrapment."

After closing argument, the trial court convicted appellant, stating that "when you take the totality of this case, it's crystal clear." The court specifically pointed to the fourteenth and fifteenth of the 1,199 text messages in the record, in which "[appellant] said, it's okay, I know you're not eighteen. And [Kylie] said, . . . I'm not trying to hide anything, I'm almost fifteen." The court stated that the "conversation should have ended at that point. It should have stopped. You should not have had 108 more pages of text messages because this person told you that they were almost fifteen." The court concluded that "[t]he persuasive evidence was asking for that full naked selfie, the masturbation instructions, and the description of how you were going to make love and penetrate what you thought was Kylie."

Appellant filed a motion to set aside the verdict. The trial court denied the motion, and this appeal followed.

## II. ANALYSIS

### A. Sufficiency of the Evidence

Appellant challenges the sufficiency of the evidence to sustain his convictions. "In determining whether the evidence was sufficient to support a criminal conviction, the appellate court views the facts in the 'light most favorable' to the Commonwealth." *Green v. Commonwealth*, 72 Va. App. 193, 200 (2020) (quoting *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017)). "In conducting [its] review, the Court defers to the trial court's findings of fact

- 9 -

unless they are plainly wrong or without evidence to support them." *Brewer v. Commonwealth*, 71 Va. App. 585, 591 (2020). "This deference is owed to both the trial court's assessment of the credibility of the witnesses and the inferences to be drawn 'from basic facts to ultimate facts.'" *Eberhardt v. Commonwealth*, 74 Va. App. 23, 31 (2021) (quoting *Davis v. Commonwealth*, 65 Va. App. 485, 500 (2015)). Our deferential standard of review also "'requires us to "discard the evidence of the accused in conflict with that of the Commonwealth[] and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn'" from that evidence." *Green*, 72 Va. App. at 200 (alteration in original) (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 236 (2016)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)). "In the end, the appellate court 'ask[s] whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."'" *Eberhardt*, 74 Va. App. at 31 (alteration in original) (quoting *Davis*, 65 Va. App. at 500).

Appellant argues that the trial court erred in denying his motion to strike because "no reasonable fact finder could have found guilt . . . on the issue of whether [appellant] knew or had reason to believe that he was communicating with a 14 year old." He notes that he "did not have an actual interaction with a child younger than 15 years of age" and "did not personally know the person that he was communicating with," and thus "did not have direct knowledge of their age from observation." Appellant also notes that he received photographs from and spoke on the telephone with officers portraying Kylie who ranged in age from their mid-twenties to their early or mid-thirties and that only filters and not age-regression software were used to alter the photographs. Appellant further contends that his "continued questioning as to the age of Kylie

exhibited his doubts as to her age"—doubts that "were planted in his mind by [Kylie's] photos and her voice on the phone"—and that "[t]hose expressed doubts do not lead to a reasonable decision by the trial court that . . . [he] knew that Kylie was 14 years old."

Code § 18.2-374.3(C) provides that it is unlawful for a person aged eighteen or older to "use a communications system . . . , or any other electronic means, for the purposes of soliciting, with lascivious intent, any person he knows or has reason to believe is a child younger than 15 years of age" to participate in certain sexual activities.[2] "Code § 18.2-374.3(C) creates a crime that involves the incitement to act illegally rather than actually committing the illegal act. Thus, . . . the defendant's solicitation of sexual behavior from a person that he believes is a child constitutes the behavior that the legislature intended to prohibit." *Grafmuller v. Commonwealth*, 57 Va. App. 58, 63-64 (2010) (considering whether imposition of a mandatory minimum sentence under Code § 18.2-374.3(C) requires proof that the solicited person was actually a child under the age of fifteen). Accordingly, "proof of the actual age of the recipient of the offending communication [is] irrelevant. A trial court may convict a defendant upon proof that he *believed* the person that he solicited was a child" younger than fifteen years of age, *id.* at 64, or "ha[d] a 'reason to believe' the subject of the solicitation [was such] a child," *Ducharme v. Commonwealth*, 70 Va. App. 668, 675 (2019).

Here, a rational trier of fact could have found that appellant had reason to believe the person he communicated with to solicit sexual behavior was a child younger than fifteen years of age. As noted by the trial court, Kylie repeatedly told appellant that she was younger than fifteen, and first told him this in the fifteenth of the 1,199 text messages appellant and Kylie would exchange. Detective Wechsler testified that despite the age Kylie listed on her

---

[2] Because appellant's argument challenging the sufficiency of the evidence addresses only the scienter of age element of the offense, we do not address the sufficiency of the evidence of the other elements of a violation of Code § 18.2-374.3(C).

MocoSpace profile, in Kylie's person-to-person communications with appellant, Wechsler consistently maintained that Kylie was fourteen years old. Kylie also corrected appellant when he misstated her age, reminding him that she was "almost fifteen" and that she "wish[ed]" she "was eighteen." Appellant repeatedly acknowledged that Kylie was younger than fifteen years old, telling her that being born in 2005 was "ok," "I know you're not fifteen but I'm gonna treat you like you're older," and responding to her when she corrected him that she was "[a]lmost fifteen" by saying, "[t]hat's right."

As noted by the trial court, there were additional "collateral facts" to support a conclusion that appellant had reason to believe that Kylie was under the age of fifteen. Kylie told appellant that she was still in school, some people did not want to talk to her on social media when she told them her age, and she wanted appellant to teach her how to drive. She also made clear that her mother checked up on her, she needed her mother's permission for social outings, and she did not want her mother to know that she was communicating with an adult man. Additionally, appellant made numerous statements a reasonable factfinder could infer support the conclusion that appellant credited Kylie's representations about her age. Appellant told Kylie they would "have to be careful no one must find out" about them, "I would be in jail if I was [a police officer] for talking to u," "you can get me in so much trouble you know," "it's our secret. . . . You know I could get in trouble talking to you," and "I can get i[n] so much trouble do u think I would risk my career my life" by posting naked photographs of Kylie online. Detective Wechsler also testified that early in the text exchanges between Kylie and appellant, appellant suggested that they communicate via Kik. Wechsler testified that Kik is used by "the community of people who operate on MocoSpace" because logging out of Kik renders any exchanged messages beyond recovery, and because it was "known within the community" that Kik's foreign base made it "difficult for law enforcement to send subpoenas or search warrants to." This

testimony supports a reasonable inference that appellant tried to conceal that he was soliciting sexual conduct from a person he had reason to believe was a child younger than fifteen.

Appellant argues on brief, as he argued at trial, that "it was all a charade on both sides" and that he believed he was merely engaged in role play with an older, consenting person. We are unpersuaded by this argument.

"When examining an alternate hypothesis of innocence, the question is not whether 'some evidence' supports the hypothesis, but whether a rational factfinder could have found that the incriminating evidence renders the hypothesis of innocence unreasonable." *Vasquez*, 291 Va. at 250 (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)). "The Commonwealth . . . 'need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant.'" *Young v. Commonwealth*, 70 Va. App. 646, 653 (2019) (quoting *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011)). "The fact finder 'determines which reasonable inferences should be drawn from the evidence[] and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant.'" *Id.* at 654 (alteration in original) (quoting *Moseley*, 293 Va. at 464). "Consequently, whether the evidence excludes all reasonable hypotheses of innocence is a 'question of fact,' and like any other factual finding, it is subject to 'revers[al] on appeal only if plainly wrong.'" *Id.* (alteration in original) (quoting *Thorne v. Commonwealth*, 66 Va. App. 248, 254 (2016)).

Here, as discussed above, there was ample evidence that appellant had reason to believe that Kylie was younger than fifteen years old. Appellant contends that based upon the photographs Kylie sent him and her voice in their first telephone call he had "doubts as to her age," and argues that those doubts support the conclusion that he did not know or have reason to believe Kylie was only fourteen. However, in convicting appellant, the trial court rejected appellant's hypothesis of innocence as unreasonable, after finding that "the pictures are not

- 13 -

inconsistent with someone who is younger" and "not inconsistent with a fourteen year old." Based upon these factual findings, and the substantial evidence in the record that appellant had reason to believe that Kylie was younger than fifteen years old, we conclude that appellant's hypothesis springs from his imagination rather than from the facts. Accordingly, the trial court was not plainly wrong to reject it.

The trial court considered the totality of the evidence and found it sufficient to render appellant's violations of Code § 18.2-374.3(C) "crystal clear"—including the requirement that appellant knew or had reason to believe that Kylie was younger than fifteen years of age. Because a rational trier of fact could have agreed and found that the evidence proved the elements of appellant's offenses beyond a reasonable doubt, we find no error by the trial court in convicting appellant.

## B. Entrapment

Appellant further argues that he initiated a conversation on MocoSpace with a woman whom, based upon her MocoSpace profile information, he believed to be eighteen years old and that "[t]here is nothing from those facts to make the jump that [he] contacted . . . [Kylie] in an attempt to solicit a girl younger than 15 for sexual purposes." Subsequently, Detective Wechsler texted that Kylie was "almost 15," thus presenting "new information" that appellant contends demonstrates the police "conceived and planned the offense in an active manner." Accordingly, appellant argues, he was entrapped by police. Appellant also contends that he was entrapped because it was "only after [Kylie] brought up . . . naked pictures" that appellant requested a naked selfie from Kylie.

"Entrapment is the conception and planning of an offense by an officer, and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer." *McCoy v. Commonwealth*, 9 Va. App. 227, 231 (1989)

(quoting *Stamper v. Commonwealth*, 228 Va. 707, 715 (1985)). It "occurs when the defendant's criminal conduct was the product of "'creative activity" [by the police] that implants in the mind of an otherwise innocent person the disposition to commit an offense and induce its commission in order to prosecute.'" *Id.* (alteration in original) (quoting *Stamper*, 228 Va. at 715). However, "[i]f the criminal design originated in the mind of the defendant and the police did no more than 'afford an opportunity for the commission of a crime' by a willing participant, then no entrapment occurred." *Id.* (quoting *Huffman v. Commonwealth*, 222 Va. 823, 828 (1981)).

Entrapment is an affirmative defense. *Id.* at 234. "In Virginia, a criminal defendant typically bears the burden of 'producing evidence in support of [an affirmative defense] sufficient to raise a reasonable doubt of [his or her] guilt.'" *Williams v. Commonwealth*, 57 Va. App. 341, 352 (2010) (alterations in original) (quoting *Regular Veterans Assoc., Ladies Auxiliary v. Commonwealth*, 18 Va. App. 683, 688 (1994)). "[A] defendant may shoulder this burden of production by pointing to evidence adduced during the government's case, by introducing evidence to his own behoof, by relying on some combination of the foregoing, or otherwise by reference to any probative material in the record." *Id.* (quoting *United States v. Rodriguez*, 858 F.2d 809, 814 (1st Cir. 1988)). "However, once the defendant meets that burden, the Commonwealth, retaining the ultimate burden of persuasion, may be required to disprove the defense." *Id.* In a bench trial, "the trial judge assumes the role of the jury in deciding whether entrapment has occurred. Accordingly, his factual findings are entitled to the same weight as that accorded a jury verdict and will not be disturbed on appeal unless plainly wrong or without evidence to support them." *Schneider v. Commonwealth*, 230 Va. 379, 382 (1985). This standard of review applies "because the credibility of witnesses and the weight accorded their testimony are matters solely for the fact finder who has the opportunity of seeing and hearing the witnesses." *Id.*

We conclude that appellant's entrapment arguments are without merit because the evidence does not support them. With respect to his first argument—that nothing about his initial contact with Kylie suggested an attempt to solicit a child younger than fifteen and that Wechsler's statement that Kylie was "almost 15" was "new information" that demonstrated Wechsler's conception and planning of appellant's offense—the evidence demonstrates the opposite. Wechsler testified that MocoSpace was one of the websites he investigated as a member of the Internet Crimes Against Children Task Force and that his duties with the task force included investigating websites used by people "known to be wanting to have sex or looking to have sex with a child." Appellant contacted Kylie through MocoSpace before engaging in direct text messaging with her. Then, in only his third text message to Kylie, and without Kylie having raised the subject of school, appellant asked her, "why u not in school or are you graduated." In his seventh and eighth text messages, sent only five minutes into his conversation with Kylie, appellant told her, "be honest with me how old are u . . . . It's ok I know your not 18." From this evidence, a reasonable factfinder could infer that appellant was trying to determine if Kylie was in fact younger than eighteen and that he hoped she was so. When Wechsler responded to appellant by stating Kylie's putative age—"new information" he provided only in response to a direct question from appellant, after appellant himself had raised the question of Kylie's age—appellant again reassured Kylie that "it's ok" that she was not eighteen. Thus, rather than demonstrating that Wechsler conceived and planned appellant's offense, the evidence and reasonable inferences from it demonstrate that he did nothing more than afford appellant the opportunity to commit a crime already conceived by appellant.

Appellant also contends that he was entrapped because he only requested a naked selfie from Kylie after she first broached the subject of naked photographs. Again, the record does not support appellant's argument. During their text messaging, appellant asked Kylie if she "like[d]

- 16 -

being told what to do is that wh[a]t u like you like it when a guy takes charge." Kylie responded affirmatively, and appellant told her, "[y]ou got it." Moments later, appellant texted Kylie to ask her if she wanted to "honor me and to obey m[e]." When she responded that she did, he replied, "[o]k let's see if u will obey." He then told Kylie to send him photographs, including of her "sexy legs" and one "[f]rom [the] waist done [sic]." When Kylie sought clarification, asking, "[n]aked?" appellant replied, "[h]ey you s[a]id you where ready to obey me." Thus, although Kylie first used the term "naked" in reference to selfies, a reasonable factfinder could conclude from the record that Kylie did so only after appellant led her to believe that a naked selfie is what he wanted and expected her to provide. Appellant first elicited that Kylie would like it if he took charge and told her what to do, then told her that he would take charge and give her instructions. Shortly thereafter, he elicited her agreement that she wanted to honor and obey him, before informing her that he would put her obedience to the test. Appellant then instructed Kylie to send him a photograph of her "sexy legs" followed by a photograph of her from the waist down. The totality of this evidence supports the inference that appellant manipulated Kylie into obeying him by sending him "sexy" photographs and that in such a context, a selfie from the waist down would be a naked one. Appellant's own immediate response to Kylie supports this; when she asked him if the photograph from the waist down should be "[n]aked," he replied, "[h]ey you s[a]id you where ready to obey me." Accordingly, rather than appellant's later requests for naked selfies arising from police activity that planted the idea of those requests in appellant's mind, appellant himself conceived of manipulating Kylie into sending him naked selfies.

Because the evidence does not support appellant's arguments that he was entrapped by police, appellant cannot carry the burden of production for his entrapment defense. Accordingly, the trial court was not plainly wrong in rejecting that defense and convicting appellant.[3]

## III.  CONCLUSION

Finding no error by the trial court, we affirm appellant's convictions.

*Affirmed.*

---

[3] Appellant presents two further assignments of error that this Court declines to address. In his third assignment of error, he alleges that the court erred in denying his motion to strike because Code § 18.2-374.3 is overbroad as applied to speech and thus violates the First Amendment of the U.S. Constitution. However, on brief, appellant stated that based on his reading of the relevant case law, he would not argue this issue. *See Stoltz v. Commonwealth*, 297 Va. 529, 537-38 (2019) (rejecting the appellant's argument that Code § 18.2-374.3(C) is overbroad and thus violates the First Amendment); *cf. Podracky v. Commonwealth*, 52 Va. App. 130 (2008) (rejecting a First Amendment overbreadth challenge to then-Code § 18.2-374.3(B)). At oral argument, appellant reiterated that he had "conceded" this assignment of error. Accordingly, we do not address it. *See Cheng v. Commonwealth*, 240 Va. 26, 41 (1990) (declining to consider issues that were "neither briefed nor argued orally" on appeal).

In appellant's fourth assignment of error, he asserts that the trial court erred in denying his "post-trial motion to not apply mandatory minimum sentences . . . because the alleged crime did not involve an actual 'child' under the age of 15 as required by [Code § 18.2-374.3(C)]." However, appellant stated at oral argument that he was "going to have to concede" on this issue based upon *Grafmuller*, "which seems to be directly on point." *See Grafmuller*, 57 Va. App. at 63-67 (holding that "[t]he victim of the crime need not be an actual child for the mandatory minimum sentence to apply"). Accordingly, we do not address appellant's fourth assignment of error. *See Crawford v. Commonwealth*, 55 Va. App. 457, 481 (2009) (*en banc*) (noting that a concession of law by an appellant "qualifies either as a waiver for purposes of Rule 5A:18 or as an express withdrawal of an appellate challenge to a trial court judgment" and that in either case, the Court "may accept the concession—not as a basis for deciding the . . . issue . . . , but as a basis for not deciding it" (quoting *Logan v. Commonwealth*, 47 Va. App. 168, 173 n.4 (2005) (*en banc*))).